IN THE MATTER OF JOHN FRANCIS CAHILL, AN ATTORNEY OF THE SUPREME COURT OF NEW JERSEY.

Submitted April 1, 1901—Decided September 17, 1901.

1. To justify the disbarment of an attorney, one of three things should be established: 1. Conviction of crime. 2. Evidence which, in the judgment of the court, shows that a crime has been committed and that the facts proven would justify a conviction thereof. 3. Such intentional fraud upon the court or a client as shows evidence of moral turpitude.
2. For less offences, such temporary suspension as the court may deem proper punishment will be imposed.

Heard on depositions taken under a rule to show cause why the respondent should not be disbarred.

Before Justices GUMMERE and FORT.

For the rule, *Louis Hood.*

*Contra, William J. Kearns* and *George T. Werts.*

The opinion of the court was delivered by

FORT, J. Upon a proceeding in the Court of Chancery, in the case of Riker *v.* Riker, on a petition for divorce, it appeared, during the taking of the depositions therein, that the suit was instituted and carried on by collusion between the parties to the record, and that the defendant in the petition was paying the costs of the suit; that a co-respondent was provided in the case by the defendant, after a consultation with the solicitor as to the cause for divorce and the method of obtaining it. It also appeared that the petitioner and her husband went to the office of the solicitor together for the first consultation as to the divorce, and that, at that time, a retaining fee was paid to the solicitor by the wife of $25 in cash, handed to her by the husband, if not in the presence of the solicitor, certainly under such circumstances as admit of no

possible theory, upon which belief can be founded, that the solicitor did not know from whence the money came. Before the master, at the taking of the depositions in the divorce case, the petitioner broke down under his inquiry and confessed the truth. The Chancellor, when his attention was brought to the facts, communicated the same to this court, with the suggestion that it was a case for discipline. This court promptly granted the rule under which the depositions now before the court were taken. The solicitor in the Chancery suit, and cited in this rule, was John Francis Cahill, an attorney of this court, admitted at the November Term, 1896. A large amount of testimony has been taken and many witnesses examined, including the parties to the divorce suit, and Mr. Cahill.

Mr. Cahill denied each allegation, and claims that he was without knowledge of the collusive character of the divorce suit.

The chief witness against Mr. Cahill in the case, aside from Mrs. Riker, is a Mr. Flohn. His testimony is circumstantial and incriminating. He is, however, quite successfully impeached as to his reputation for truth, and if it were not for the corroboration of his evidence by Mrs. Riker and, in some respects, by Mr. Riker, as well as by dates and circumstances, we should be inclined to give little, if any, credence to his statements, but, under the facts proven in this case, it is impossible to conclude that he does not, in some respects at least, state the truth.

All admit that Flohn rented a part of Cahill's outer office; that he first met Mr. Riker there; that he was, at that time, not unfriendly with Cahill; that Cahill knew, on the day he filed the petition for divorce, that Flohn was a witness to the facts of the alleged grounds for divorce, and that the incriminating evidence had been obtained between the date of the first call of the Rikers on Mr. Cahill, on November the 18th, and that of the filing of the petition, on the 24th of the same month. Cahill also knew that, on the 18th, there was no cause for an absolute divorce between the parties, and so told them.

Who obtained Kitty Mitchell to go with Riker to the St. Cloud Hotel to make the case for a divorce? Flohn says he did, and details how he planned it, and says he did it at Mr. Cahill's suggestion and for him. Under the evidence, discrediting Flohn and accepting Cahill's denial, this fact may be said not to be proven, but it is clear that Cahill, if he did not actually plan and know of this, did, on November 24th, if Mrs. Riker is to be relied upon, learn from her the way in which this evidence was obtained; and it is also proven, by Cahill's own testimony, that later on the same day he talked with Flohn about the circumstances. That fact, coupled with a subsequent demand by Cahill of Mrs. Riker for the payment to him by her of $10, which, she says, he stated to her Mr. Riker had told him he had given to her to pay him, seems to make it incredible that Cahill was unaware of the collusive character of the divorce proceedings. Mr. Riker also testifies that Cahill asked him if he had sent Mrs. Riker the $10. Mr. Riker was also at Cahill's office certainly three times, if not more, while the divorce proceedings were pending. What for?

There is a theory of this matter, which, if Flohn's evidence were accepted in the full, would establish a clear case of conspiracy on the part of Flohn, Cahill and Riker to commit a crime, in order to secure this divorce for Mrs. Riker.

Cahill has hitherto borne a good reputation, and, in the face of his denial, that charge must also be found to be not proven.

But it does appear from the evidence, and it is proven, that Mr. Cahill knew that this divorce was being sought by collusive action of the parties. That conclusion is irresistible.

By the Divorce act it is provided as follows: "That if it appears to the court that the adultery complained of shall have been occasioned by the collusion of the parties and done with an intent to procure a divorce, * * * then no divorce shall be granted;" and also that "the plaintiff shall make his or her oath or affirmation, to be annexed to said petition, that his or her complaint is not made by collusion between him or her and the defendant for the purpose of dissolving their marriage, but in truth and good faith for the cause or causes

set forth in the petition." *Gen. Stat., pp.* 1272, 1268, §§ 7, 30.

It seems hard to believe that the least inquiry or examination would not have shown to Mr. Cahill that the adultery, which he was informed was the ground for the divorce, was "done with an intent to procure a divorce," and we have already found, under the evidence herein, that the complaint was made by collusion between the parties "for the purpose of dissolving their marriage," and that, too, with Cahill's knowledge. A solicitor cannot shut his eyes to facts and say, "I did not see them," when he would have seen them if he had kept his eyes open.

The court must feel that it can rely implicitly upon the representations and recitals of fact by its attorneys and solicitors. If a solicitor allows a petition for divorce to be presented to the court, with an affidavit of non-collusion which he knows to be false, he participates in an attempt to deceive the court. Such conduct in an officer of the court is highly reprehensible. The court has the right to rely upon the integrity of its officers. The legal profession is a confidential one, with a double duty upon its members, viz., utmost good faith toward both client and court. A lawyer who seeks by trick or by deception to impose upon either his client or the court is unfitted to advise the one or to appear before the other. He desecrates the temple of justice.

It is quite gratifying to be unable to recall any previous case of this nature having been presented to this court. The bar of this state has maintained a high standard of ethics in its relation with the court. It is greatly to be regretted that this single instance of apparent lapse in this regard should have occurred.

The disbarring of a lawyer is a serious matter. It is not only a disgrace, but a destruction of his intended lifework. Nevertheless, for proper cause, the court should not hesitate to strike an attorney from the roll.

To justify the disbarment of an attorney one of three things should be established:

1. Conviction of crime.

2. Evidence which, in the judgment of the court, shows that a crime has been committed and that the facts proven would justify a conviction thereof.

3. Such intentional fraud upon the court or a client as shows evidence of moral turpitude.

For less offences, such temporary suspension as the court may deem proper punishment will be imposed.

Under the evidence the case before us is not within either of the three reasons above stated for disbarment. It is, however, a case for discipline by suspension. We have had regard, in fixing the penalty in this case, to the length of time that Mr. Cahill has been at the bar and other facts shown by the evidence. An order will be entered that John Francis Cahill be suspended as an attorney of this court until the first day of the November Term of the Supreme Court for the year 1903, and that he be prohibited from practicing as an attorney or a solicitor in any of the courts of this state until said date, upon pain of being stricken from the roll absolutely if he shall violate the order of suspension.