## MIDDLESEX COUNTY ETHICS COMMITTEE *v.* GARDEN STATE BAR ASSOCIATION ET AL.

No. 81–460.   Argued March 31, 1982—Decided June 21, 1982

424

BURGER, C. J., delivered the opinion of the Court, in which WHITE, POWELL, REHNQUIST, and O'CONNOR, JJ., joined. BRENNAN, J., filed an opinion concurring in the judgment, *post*, p. 438. MARSHALL, J., filed an opinion concurring in the judgment, in which BRENNAN, BLACKMUN, and STEVENS, JJ., joined, *post*, p. 438.

*Mary Ann Burgess*, Assistant Attorney General of New Jersey, argued the cause for petitioner. With her on the briefs were *Irwin I. Kimmelman*, Attorney General, *James R. Zazzali*, former Attorney General, *Erminie L. Conley* and *James J. Ciancia*, Assistant Attorneys General, and

*Richard M. Hluchan* and *Jaynee LaVecchia,* Deputy Attorneys General.

*Morton Stavis* argued the cause for respondents. With him on the brief were *Bernard K. Freamon* and *Louise Halper.\**

CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to determine whether a federal court should abstain from considering a challenge to the constitutionality of disciplinary rules that are the subject of pending state disciplinary proceedings within the jurisdiction of the New Jersey Supreme Court. 454 U. S. 962 (1981). The Court of Appeals held that it need not abstain under *Younger* v. *Harris,* 401 U. S. 37 (1971). We reverse.

## I

### A

The Constitution of New Jersey charges the State Supreme Court with the responsibility for licensing and disciplining attorneys admitted to practice in the State. Art. 6, § 2, ¶ 3.[1] Under the rules established by the New Jersey Supreme Court, promulgated pursuant to its constitutional authority, a complaint moves through a three-tier procedure. First, local District Ethics Committees appointed by the

---

*Briefs of *amici curiae* urging affirmance were filed by *Charles S. Sims* and *Arthur N. Eisenberg* for the American Civil Liberties Union; and by *Max D. Stern* for the National Alliance Against Racist and Political Repression.

*Jack Greenberg, James M. Nabrit III, Charles Stephen Ralston,* and *Bill Lann Lee* filed a brief for the NAACP Legal Defense and Educational Fund, Inc., et al. as *amici curiae.*

[1] Article 6, § 2, ¶ 3, provides:

"The Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts. The Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted."

State Supreme Court are authorized to receive complaints relating to claimed unethical conduct by an attorney. New Jersey Court Rule 1:20–2(d). At least two of the minimum of eight members of the District Ethics Committee must be nonattorneys. Complaints are assigned to an attorney member of the Committee to report and make a recommendation. Rule 1:20–2(h). The decision whether to proceed with the complaint is made by the person who chairs the Ethics Committee. If a complaint is issued by the Ethics Committee it must state the name of the complainant, describe the claimed improper conduct, cite the relevant rules, and state, if known, whether the same or a similar complaint has been considered by any other Ethics Committee. The attorney whose conduct is challenged is served with the complaint and has 10 days to answer.[2]

Unless good cause appears for referring the complaint to another Committee member, each complaint is referred to the member of the Committee who conducted the initial investigation for review and further investigation, if necessary. The Committee member submits a written report stating whether a prima facie indication of unethical or unprofessional conduct has been demonstrated. The report is then evaluated by the chairman of the Ethics Committee to determine whether a prima facie case exists. Absent a prima facie showing, the complaint is summarily dismissed. If a prima facie case is found, a formal hearing on the complaint is held before three or more members of the Ethics Committee,

---

[2] For a more detailed explanation of the disciplinary procedure of the District Ethics Committees, see Rule 1:20–2. As noted below, the procedure, as amended in 1981, now provides that a charged attorney may raise constitutional questions in the District Committees. Any constitutional challenges are to be set forth in the answer to the complaint. Rule 1:20–2(j) now provides:

"All constitutional questions shall be withheld for consideration by the Supreme Court as part of its review of the final decision of the Disciplinary Review Board. Interlocutory relief may be sought only in accordance with R. 1:20–4(d)(i)."

a majority of whom must be attorneys. The lawyer who is charged with unethical conduct may have counsel, discovery is available, and all witnesses are sworn. The panel is required to prepare a written report with its findings of fact and conclusions. The full Committee, following the decision of the panel, has three alternatives. The Committee may dismiss the complaint, prepare a private letter of reprimand, or prepare a presentment to be forwarded to the Disciplinary Review Board. Rule 1:20–2(o).[3]

The Disciplinary Review Board, a statewide board which is also appointed by the Supreme Court, consists of nine members, at least five of whom must be attorneys and at least three of whom must be nonattorneys. The Board makes a *de novo* review. Rule 1:20–3(d)(3).[4] The Board is required to make formal findings and recommendations to the New Jersey Supreme Court.

All decisions of the Disciplinary Review Board beyond a private reprimand are reviewed by the New Jersey Supreme Court. Briefing and oral argument are available in the Supreme Court for cases involving disbarment or suspension for more than one year. Rule 1:20–4.

### B

Respondent Lennox Hinds, a member of the New Jersey Bar, served as executive director of the National Conference of Black Lawyers at the time of his challenged conduct. Hinds represented Joanne Chesimard in a civil proceeding challenging her conditions of confinement in jail. In 1977

---

[3] Each District Ethics Committee appoints one member of the bar to serve as Secretary. The Secretary maintains records of the proceedings. The Secretary also transmits copies of all documents filed to the Division of Ethics and Professional Services. Rule 1:20–2(c).

[4] Subsequent to the initiation of the disciplinary hearing involved in this case, Rule 1:20–3(e) was amended to provide:

"Constitutional challenges to the proceedings not raised before the District Committee shall be preserved, without Board action, for Supreme Court consideration as part of its review of the matter on the merits. Interlocutory relief may be sought only in accordance with Rule 1:20–4(d)(i)."

Chesimard went to trial in state court for the murder of a policeman. Respondent Hinds was not a counsel of record for Chesimard in the murder case. However, at the outset of the criminal trial Hinds took part in a press conference, making statements critical of the trial and of the trial judge's judicial temperament and racial insensitivity. In particular, Hinds referred to the criminal trial as "a travesty," a "legalized lynching," and "a kangaroo court."

One member of the Middlesex County Ethics Committee read news accounts of Hinds' comments and brought the matter to the attention of the Committee. In February 1977 the Committee directed one of its members to conduct an investigation. A letter was written to Hinds, who released the contents of the letter to the press. The Ethics Committee on its own motion then suspended the investigation until the conclusion of the Chesimard criminal trial.

After the trial was completed the Committee investigated the complaint and concluded that there was probable cause to believe that Hinds had violated DR 1–102(A)(5) of the Disciplinary Rules of the Code of Professional Responsibility.[5] That section provides that "[a] lawyer shall not . . . [e]ngage in conduct that is prejudicial to the administration of justice." Respondent Hinds also was charged with violating DR 7–107(D), which prohibits extrajudicial statements by lawyers associated with the prosecution or defense of a criminal matter.[6] The Committee then served a formal statement of charges on Hinds.

---

[5] The Disciplinary Rules of the Code of Professional Responsibility and Code of Judicial Conduct of the American Bar Association, with amendment and supplementation, have been adopted by the New Jersey Supreme Court as the applicable standard of conduct for members of the bar and the judges of New Jersey. New Jersey Court Rule 1:14.

[6] DR 7–107 deals with "Trial Publicity" and states:

"(D) During the selection of a jury or the trial of a criminal matter, a lawyer or law firm associated with the prosecution or defense of a criminal matter shall not make or participate in making an extra-judicial statement that he expects to be disseminated by means of public communication and

Instead of filing an answer to the charges in accordance with the New Jersey Bar disciplinary procedures, Hinds and the three respondent organizations filed suit in the United States District Court for the District of New Jersey contending that the disciplinary rules violated respondents' First Amendment rights. In addition, respondents charged that the disciplinary rules were facially vague and overbroad. The District Court granted petitioner's motion to dismiss based on *Younger* v. *Harris*, 401 U. S. 37 (1971), concluding that "[t]he principles of comity and federalism dictate that the federal court abstain so that the state is afforded the opportunity to interpret its rules in the face of a constitutional challenge." App. to Pet. for Cert. 53a–54a. At respondents' request the District Court reopened the case to allow respondents an opportunity to establish bad faith, harassment, or other extraordinary circumstance which would constitute an exception to *Younger* abstention. *Dombrowski* v. *Pfister*, 380 U. S. 479 (1965). After two days of hearings the District Court found no evidence to justify an exception to the *Younger* abstention doctrine and dismissed the federal-court complaint.

A divided panel of the United States Court of Appeals for the Third Circuit reversed on the ground that the state bar disciplinary proceedings did not provide a meaningful opportunity to adjudicate constitutional claims. 643 F. 2d 119 (1981). The court reasoned that the disciplinary proceedings in this case are unlike the state judicial proceedings to which the federal courts usually defer. The Court of Appeals majority viewed the proceedings in this case as administrative, "nonadjudicative" proceedings analogous to the preindictment stage of a criminal proceeding.[7]

---

that relates to the trial, parties, or issues in the trial or other matters that are reasonably likely to interfere with a fair trial . . . ."

[7] The majority concluded that the hearings are designed to elicit facts, not legal arguments, as indicated by the presence of nonlawyers. The court also found that the ability to raise constitutional claims before the

On petition for rehearing petitioner attached an affidavit from the Clerk of the New Jersey Supreme Court which stated that the New Jersey Supreme Court would directly consider Hinds' constitutional challenges and that the court would consider 'whether such a procedure should be made explicit in the Supreme Court rules. On reconsideration a divided panel of the Third Circuit declined to alter its original decision, stating that the relevant facts concerning abstention are those that existed at the time of the District Court's decision. 651 F. 2d 154 (1981).[8]

Pending review in this Court, the New Jersey Supreme Court has heard oral arguments on the constitutional challenges presented by respondent Hinds and has adopted a rule allowing for an aggrieved party in a disciplinary hearing to

Ethics Committee does not constitute a meaningful opportunity to have constitutional questions adjudicated. No formal opinion is filed by the District Ethics Committee. The Third Circuit distinguished *Gipson* v. *New Jersey Supreme Court*, 558 F. 2d 701 (CA3 1977), on the ground that in *Gipson* the attorney being disciplined was already subject to the state-court action at the time the federal proceeding had been initiated.

Judge Adams, concurring, emphasized that state courts have the primary responsibility to discipline their bar and, in general, the federal judiciary is to exercise no supervisory powers. Judge Weis, dissenting, argued that respondents have full opportunity in the New Jersey proceedings to raise constitutional issues, concluding that the disciplinary proceedings are not a series of separate segments before independent bodies but are part of a whole. Judge Weis also concluded that there was nothing to prevent the Ethics Committee from considering constitutional claims.

[8] The panel majority noted that no rule existed at the time of the District Court's decision to assure the Court of Appeals that the New Jersey Supreme Court would consider the constitutional claims. The court also concluded that the possibility of a formal procedure of the New Jersey court for consideration of constitutional claims does not moot this case because the underlying dispute as to the validity of the rules still remains. Judge Weis, again dissenting, concluded that no justiciable controversy remained as to the issue in the Court of Appeals and recommended that the case be remanded and dismissed as moot.

seek interlocutory review of a constitutional challenge to the proceedings.[9]

## II

### A

*Younger* v. *Harris, supra,* and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances. The policies underlying *Younger* abstention have been frequently reiterated by this Court. The notion of "comity" includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.,* at 44.[10] Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights.

---

[9] Rule 1:20–4(d) states:

"(i) Interlocutory Review. An aggrieved party may file a motion for leave to appeal with the Supreme Court to seek interlocutory review of a constitutional challenge to proceedings pending before the District Ethics Committee or the Disciplinary Review Board. The motion papers shall conform to R. 2:8–1. Leave to appeal may be granted only when necessary to prevent irreparable injury. If leave to appeal is granted, the record below may, in the discretion of the Court, be supplemented by the filing of briefs and oral argument.

"(ii) Final Review. In any case in which a constitutional challenge to the proceedings has been properly raised below and preserved pending review of the merits of the disciplinary matter by the Supreme Court, the aggrieved party may, within 10 days of the filing of the report and recommendation of the Disciplinary Review Board, seek the review of the Court by proceeding in accordance with the applicable provisions of R. 1:19–8."

[10] *Samuels* v. *Mackell,* 401 U. S. 66 (1971), concluded that the same comity and federalism principles govern the issuance of federal-court declaratory judgments concerning the state statute that is the subject of the ongoing state criminal proceeding.

432

The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved. *Moore* v. *Sims*, 442 U. S. 415, 423 (1979); *Huffman* v. *Pursue, Ltd.*, 420 U. S. 592, 604–605 (1975). The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature, as in *Huffman, supra.* Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. *Trainor* v. *Hernandez*, 431 U. S. 434 (1977); *Juidice* v. *Vail*, 430 U. S. 327 (1977). Where vital state interests are involved, a federal court should abstain "unless state law clearly bars the interposition of the constitutional claims." *Moore*, 442 U. S., at 426. "[T]he . . . pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims . . . ." *Id.*, at 430. See also *Gibson* v. *Berryhill*, 411 U. S. 564 (1973).

The question in this case is threefold: *first*, do state bar disciplinary hearings within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding; *second*, do the proceedings implicate important state interests; and *third*, is there an adequate opportunity in the state proceedings to raise constitutional challenges.

B

The State of New Jersey, in common with most States,[11] recognizes the important state obligation to regulate persons

---

[11] See M. Shoaf, State Disciplinary Enforcement Systems Structural Survey (ABA National Center for Professional Responsibility 1980).

The New Jersey allocation of responsibility is consistent with § 2.1 of the ABA Standards for Lawyer Discipline and Disability Proceedings (Proposed Draft 1978), which states that the "[u]ltimate and exclusive responsibility within a state for the structure and administration of the lawyer discipline and disability system and the disposition of individual cases is within the inherent power of the highest court of the state."

who are authorized to practice law. New Jersey expresses this in a state constitutional provision vesting in the New Jersey Supreme Court the authority to fix standards, regulate admission to the bar, and enforce professional discipline among members of the bar. N. J. Const., Art. 6, § 2, ¶ 3. The Supreme Court of New Jersey has recognized that the local District Ethics Committees act as the arm of the court in performing the function of receiving and investigating complaints and holding hearings. Rule 1:20–2; *In re Logan,* 70 N. J. 222, 358 A. 2d 787 (1976). The New Jersey Supreme Court has made clear that filing a complaint with the local Ethics and Grievance Committee "is in effect a filing with the Supreme Court . . . ." *Toft* v. *Ketchum,* 18 N. J. 280, 284, 113 A. 2d 671, 674, cert. denied, 350 U. S. 887 (1955). "From the very beginning a disciplinary proceeding is judicial in nature, initiated by filing a complaint with an ethics and grievance committee." [12] 18 N. J., at 284, 113 A. 2d, at 674. It is clear beyond doubt that the New Jersey Supreme Court considers its bar disciplinary proceedings as "ju-

---

The rationale for vesting responsibility with the judiciary is that the practice of law "is so directly connected and bound up with the exercise of judicial power and the administration of justice that the right to define and regulate it naturally and logically belongs to the judicial department." *Id.,* commentary to § 2.1.

[12] The New Jersey Supreme Court has concluded that bar disciplinary proceedings are neither criminal nor civil in nature, but rather are *sui generis.* *In re Logan,* 70 N. J. 222, 358 A. 2d 787 (1976). See also ABA Standards for Lawyer Discipline and Disability Proceedings § 1.2 (Proposed Draft 1978). As recognized in *Juidice* v. *Vail,* 430 U. S. 327 (1977), however, whether the proceeding "is labeled civil, quasi-criminal, or criminal in nature," the salient fact is whether federal-court interference would unduly interfere with the legitimate activities of the state. *Id.,* at 335–336.

The instant case arose before the 1978 rule change. In 1978 the New Jersey Supreme Court established a Disciplinary Review Board charged with review of findings of District Ethics Committees. Nothing in this rule change, however, altered the nature of such proceedings. The responsibility under Art. 6, § 2, ¶ 3, remains with the New Jersey Supreme Court.

dicial in nature."[13]   As such, the proceedings are of a character to warrant federal-court deference.   The remaining inquiries are whether important state interests are implicated so as to warrant federal-court abstention and whether the federal plaintiff has an adequate opportunity to present the federal challenge.

C

The State of New Jersey has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses.   States traditionally have exercised extensive control over the professional conduct of attorneys.   See n. 11, *supra*.   The ultimate objective of such control is "the protection of the public, the purification of the bar and the prevention of a re-occurrence."   *In re Baron*, 25 N. J. 445, 449, 136 A. 2d 873, 875 (1957).   The judiciary as well as the public is dependent upon professionally ethical conduct of attorneys and thus has a significant interest in assuring and maintaining high standards of conduct of attorneys engaged in practice.   See *In re Stein*, 1 N. J. 228, 237, 62 A. 2d 801, 805 (1949), quoting *In re Cahill*, 66 N. J. L. 527, 50 A. 119 (1901).   The State's interest in the professional conduct of attorneys involved in the administration of criminal justice is of special importance.   Finally, the State's interest in the present litigation is demonstrated by the fact that the Middlesex County Ethics Committee, an agency of the Supreme Court of New Jersey, is the named defendant in the present

---

[13] The role of local ethics or bar association committees may be analogized to the function of a special master.   *Anonymous* v. *Association of Bar of City of New York*, 515 F. 2d 427 (CA2), cert. denied, 423 U. S. 863 (1975). The essentially judicial nature of disciplinary actions in New Jersey has been recognized previously by the federal courts.   In *Gipson* v. *New Jersey Supreme Court*, 558 F. 2d 701 (1977), the United States Court of Appeals for the Third Circuit agreed that "incursions by federal courts into ongoing [New Jersey] disciplinary proceedings would be peculiarly disruptive of notions of comity."   *Id.*, at 704.

suit and was the body which initiated the state proceedings against respondent Hinds.

The importance of the state interest in the pending state judicial proceedings and in the federal case calls *Younger* abstention into play. So long as the constitutional claims of respondents can be determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain.

## D

Respondent Hinds contends that there was no opportunity in the state disciplinary proceedings to raise his federal constitutional challenge to the disciplinary rules. Yet Hinds failed to respond to the complaint filed by the local Ethics Committee and failed even to *attempt* to raise any federal constitutional challenge in the state proceedings. Under New Jersey's procedure, its Ethics Committees constantly are called upon to interpret the state disciplinary rules. Respondent Hinds points to nothing existing at the time the complaint was brought by the local Committee to indicate that the members of the Ethics Committee, the majority of whom are lawyers, would have refused to consider a claim that the rules which they were enforcing violated federal constitutional guarantees. Abstention is based upon the theory that " '[t]he accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection.' " *Younger* v. *Harris*, 401 U. S., at 45, quoting *Fenner* v. *Boykin*, 271 U. S. 240, 244 (1926).

In light of the unique relationship between the New Jersey Supreme Court and the local Ethics Committee, and in view of the nature of the proceedings, it is difficult to conclude that there was no "adequate opportunity" for respondent Hinds

to raise his constitutional claims.[11]  *Moore*, 442 U. S., at 430.

Whatever doubt, if any, that may have existed about respondent Hinds' ability to have constitutional challenges heard in the bar disciplinary hearings was laid to rest by the subsequent actions of the New Jersey Supreme Court. Prior to the filing of the petition for certiorari in this Court the New Jersey Supreme Court *sua sponte* entertained the constitutional issues raised by respondent Hinds.  Respondent Hinds therefore has had abundant opportunity to present his constitutional challenges in the state disciplinary proceedings.[15]

There is no reason for the federal courts to ignore this subsequent development.  In *Hicks* v. *Miranda*, 422 U. S. 332 (1975), we held that "where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in federal court, the principles of *Younger* v. *Harris* should apply in full force."  *Id.*, at 349. An analogous situation is presented here; the principles of comity and federalism which call for abstention remain in full

---

[11] This case is distinguishable from *Steffel* v. *Thompson*, 415 U. S. 452, 462 (1974), in which there was no ongoing state proceeding to serve as a vehicle for vindicating the constitutional rights of the federal plaintiff. This case is also distinguishable from *Gerstein* v. *Pugh*, 420 U. S. 103, 108, n. 9 (1975), in which the issue of the legality of a pretrial detention could not be raised in defense of a criminal prosecution.  See also *Juidice* v. *Vail*, 430 U. S., at 337.

[15] In addition, after the filing of the writ of certiorari the New Jersey Supreme Court amended the state bar disciplinary rules to expressly permit a motion directly to the New Jersey Supreme Court for interlocutory adjudication of constitutional issues.  Rule 1:20–4(d)(i).  See n. 9, *supra*.  Even if interlocutory review is not granted, constitutional issues are preserved for consideration by the New Jersey Supreme Court.  Rule 1:20–2(j).

The New Jersey Supreme Court reviews all disciplinary actions except the issuance of private letters of reprimand.  Rule 1:20–4.  Rule 1:20–2(j), however, requires that all constitutional issues be withheld for consideration by the Supreme Court as part of its review of the decision of the Disciplinary Review Board.  This appears to provide for Supreme Court review of constitutional challenges even when a private reprimand is made.

force. Thus far in the federal-court litigation the sole issue has been whether abstention is appropriate. No proceedings have occurred on the merits and therefore no federal proceedings on the merits will be terminated by application of *Younger* principles. It would trivialize the principles of comity and federalism if federal courts failed to take into account that an adequate state forum for all relevant issues has clearly been demonstrated to be available prior to any proceedings on the merits in federal court. 422 U. S., at 350.[16]

Respondents have not challenged the findings of the District Court that there was no bad faith or harassment on the part of petitioner and that the state rules were not "'flagrantly and patently'" unconstitutional. *Younger, supra,* at 53, quoting *Watson* v. *Buck,* 313 U. S. 387, 402 (1941). See App. to Pet. for Cert. 50a–52a. We see no reason to disturb these findings, and no other extraordinary circumstances have been presented to indicate that abstention would not be appropriate.[17]

## III

Because respondent Hinds had an "opportunity to raise and have timely decided by a competent state tribunal the federal issues involved," *Gibson* v. *Berryhill,* 411 U. S., at 577, and because no bad faith, harassment, or other exceptional circumstances dictate to the contrary, federal courts should abstain from interfering with the ongoing proceedings. Accordingly, the judgment of the United States Court of Appeals for the Third Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

[16] Indeed, the decision of the New Jersey Supreme Court to consider respondent Hinds' constitutional challenges indicates that the state court desired to give Hinds a swift judicial resolution of his constitutional claims.

[17] It is not clear whether the Court of Appeals decided whether abstention would be proper as to the respondent organizations who are not parties to the state disciplinary proceedings. We leave this issue to the Court of Appeals on remand.

JUSTICE BRENNAN, concurring in the judgment.

For the reasons stated by JUSTICE MARSHALL, I join the judgment in this case. I agree that federal courts should show particular restraint before intruding into an ongoing disciplinary proceeding by a state court against a member of the State's bar, where there is an adequate opportunity to raise federal issues in that proceeding. The traditional and primary responsibility of state courts for establishing and enforcing standards for members of their bars and the quasi-criminal nature of bar disciplinary proceedings, *In re Ruffalo*, 390 U. S. 544, 551 (1968), call for exceptional deference by the federal courts. See *Gipson* v. *New Jersey Supreme Court*, 558 F. 2d 701, 703–704 (CA3 1977); *Erdmann* v. *Stevens*, 458 F. 2d 1205, 1209–1210 (CA2 1972). I continue to adhere to my view, however, that *Younger* v. *Harris*, 401 U. S. 37 (1971), is in general inapplicable to civil proceedings. See *Huffman* v. *Pursue, Ltd.*, 420 U. S. 592, 613 (1975) (BRENNAN, J., dissenting).

JUSTICE MARSHALL, with whom JUSTICE BRENNAN, JUSTICE BLACKMUN, and JUSTICE STEVENS join, concurring in the judgment.

I agree with much of the general language in the Court's opinion discussing the importance of the State's interest in regulating the professional conduct of its attorneys. However, I believe that the question whether *Younger* abstention would have been appropriate at the time that the District Court or the Court of Appeals considered this issue is not as simple as the Court's opinion might be read to imply. As the Court acknowledges, absent an ongoing judicial proceeding in which there is an adequate opportunity for a party to raise federal constitutional challenges, *Younger* is inapplicable. *Ante,* at 432. See also *Gibson* v. *Berryhill*, 411 U. S. 564, 577 (1973). Here, it is unclear whether, at the time the lower courts addressed this issue, there was an adequate opportunity in the state disciplinary proceedings to raise a constitu-

tional challenge to the disciplinary rules. Furthermore, it is unclear whether proceedings before the Ethics Committee are more accurately viewed as prosecutorial rather than judicial in nature.

I agree with the Court that we may consider events subsequent to the decisions of the courts below because the federal litigation has addressed only the question whether abstention is appropriate. Thus far, there have been no proceedings on the merits in federal court. *Ante,* at 436–437. After the Court of Appeals rendered its decision and denied petitioner's petition for rehearing, the New Jersey Supreme Court certified the complaint against respondent Hinds to itself. App. to Pet. for Cert. 62a. Now, there are ongoing judicial proceedings in the New Jersey Supreme Court in which Hinds has been given the opportunity to raise his constitutional challenges. As a result, *Younger* abstention, at least with respect to Hinds, is appropriate at this time. For this reason only, I join the judgment of the Court.