898 F.2d 1302
 AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL
EMPLOYEES, and Candice Crooks, Plaintiffs-Appellants,
v.
Michael TRISTANO, Director of the Illinois Department of
Central Management Services, and Michael P. Lane,
Director of the Illinois Department of
Corrections, Defendants-Appellees.
 No. 88-3447.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 6, 1989.
Decided April 6, 1990.
Rehearing and Rehearing In Banc Denied Aug. 21, 1990.
 
 Stephen A. Yokich, Cornfield & Feldman, Chicago, Ill., for plaintiffs-appellants.
 Jennifer A. Keller, Asst. Atty. Gen., Office of the Atty. Gen., Civ. Appeals Div., Chicago, Ill., for defendants-appellees.
 Before BAUER, Chief Judge, CUDAHY and KANNE, Circuit Judges.
 KANNE, Circuit Judge.
 
 
 1
 This case arises out of the implementation of a drug abuse program by the Illinois Department of Corrections ("IDOC") for its employees in March of 1988. The employees are represented by the American Federation of State, County and Municipal Employees ("Union"). The drug program allows for the testing of urine and blood samples when there is "reasonable suspicion," as determined by objective factors, that an employee is using drugs. If a test result is positive, the employee is entitled to have a second test conducted and to present evidence. If just cause is established, discipline is imposed. First offenders face a 30-day suspension, mandatory enrollment in a drug program, and subsequent random testing. Second offenders are discharged.
 
 
 2
 In January and February of 1988, the IDOC and the Illinois Department of Central Management Services ("CMS") negotiated with the Union regarding the proposed program. The parties agreed on some aspects of the program, but failed to agree on other aspects. At the conclusion of a meeting on February 23, 1988, CMS and IDOC declared the parties had reached an impasse and stated that they would implement the proposed drug abuse program. On March 1, 1988, the Union filed an unfair labor practice charge with the Illinois State Labor Relations Board.[1] At about the same time, the Union also filed a grievance against the IDOC pursuant to the grievance and arbitration procedure contained in the parties' collective bargaining agreement. The grievance contended that the drug program violated the collective bargaining agreement.
 
 
 3
 The drug abuse program was implemented on March 21, 1988. The Union and an individual employee[2] ("plaintiffs") filed this suit in district court against the directors of CMS and IDOC ("defendants") on May 19, 1988. The complaint contains four counts. Counts I through III are brought pursuant to 42 U.S.C. Sec. 1983. Count I alleges that the drug abuse program violates the employees' fourth amendment rights because it provides for unreasonable searches. Count II alleges that the drug testing program invades the employees' right to privacy contained in the United States Constitution. Count III alleges that the program violates rights contained in the due process clause. Each of these counts requests injunctive and monetary relief in addition to fees and costs. Count IV of the complaint sets forth a pendent state law claim.
 
 
 4
 On July 1, 1988, the defendants moved to dismiss the federal complaint on the ground that abstention was appropriate. On September 27, 1988, the district court granted the motion and dismissed the case. 695 F.Supp. 410. The court found that abstention was warranted by Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny.
 
 
 5
 On October 27, 1988, the plaintiffs filed a motion to reconsider and vacate the district court's dismissal order. The district court denied the plaintiffs' motion the same day. The plaintiffs appeal.
 
 I.
 
 6
 In Younger, the Supreme Court held that federal courts should abstain from enjoining pending state criminal proceedings, absent very rare circumstances such as bad faith or harassment. The underlying rationale of the decision is based primarily on the notion of "comity." That is, on "a recognition of the fact that the entire country is made up of a union of separate state governments" whose functions should be accorded respect. Younger, 401 U.S. at 44, 91 S.Ct. at 750. This concept of "Our Federalism," which played a role in the ratification of the Federal Constitution and is contained therein, represents "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." Id., 91 S.Ct. at 750-51.
 
 
 7
 The Younger principle is an exception to the rule that a federal court normally will not abstain from deciding a case within its jurisdiction. New Orleans Pub. Serv. v. Council of New Orleans, --- U.S. ----, ----, 109 S.Ct. 2506, 2518, 105 L.Ed.2d 298 (1989); Moore v. Sims, 442 U.S. 415, 423, 99 S.Ct. 2371, 2377 n. 8, 60 L.Ed.2d 994 (1977). Younger involved a federal plaintiff who requested an injunction against a state criminal proceeding in which he was a defendant. Because the underlying rationale of Younger is sufficiently broad to encompass other circumstances, the Younger principle subsequently has been extended beyond the specific circumstances of that case. In particular, the Younger principle has been applied in cases in which (1) the relief sought in federal court was something other than an injunction against the state proceedings, and (2) the state proceedings were something other than criminal trials.
 
 A.
 
 8
 The first category in which Younger has been extended concerns the relief sought by the federal plaintiff. In Younger itself, the relief sought was an injunction against the state proceeding. On the same day that Younger was decided, the Court decided a case in which the federal plaintiffs were seeking a declaratory judgment that the state statute under which they were being prosecuted was unconstitutional. Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). The Court compared a declaratory judgment with an injunction and said "ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid." Id. at 72, 91 S.Ct. at 767. The Court concluded that abstention was appropriate when the relief sought is a declaratory judgment which would have virtually the same impact on state proceedings as an injunction. Id. at 73, 91 S.Ct. at 768.
 
 
 9
 In addition, Younger abstention has been found to be appropriate by some circuits when the relief sought in federal court was damages.[3] Abstention was appropriate in these cases because a damage award would sufficiently disrupt the state proceedings that it would be akin to a declaratory judgment, see e.g. Feaster v. Miksch, 846 F.2d 21 (6th Cir.1988); Mann v. Jett, 781 F.2d 1448 (9th Cir.1986); or because the exact claim for damages in federal court was made and denied in state court, Brunken v. Lance, 807 F.2d 1325, 1331 (7th Cir.1986).
 
 
 10
 Finally, Younger abstention has been found to be appropriate when the relief sought by the federal plaintiff was an injunction against the party that had prevailed in state court to prevent it from executing its judgment prior to an appeal to a state appellate court. Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). Again, abstention was appropriate because the impact of the requested relief would be virtually the same as an injunction against the proceedings.
 
 
 11
 The common element of the relief sought in these cases is the impact on and interference with the state proceedings. If the impact is similar to the undue interference of an injunction, then the comity and federalism concerns of Younger are implicated.
 
 B.
 
 12
 The second category in which Younger has been extended concerns the type of state proceeding that is being challenged in federal court. As previously indicated, in Younger the state proceeding was a criminal trial. Subsequently, the Younger principle has been applied when state civil proceedings that involve important state interests are challenged. Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); Moore v. Sims, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1977). It also has been applied when state administrative and other quasi-judicial proceedings that involve important state interests are challenged. Middlesex Ethics Comm'n v. Garden State Bar Ass'n, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986).
 
 
 13
 The Younger principle has been held applicable to such cases because the state proceedings implicate the comity and federalism concerns expressed in Younger. Indeed, a three-part test has emerged from the cases to determine whether the Younger principle should apply when particular state proceedings are challenged. A court can abstain if the impacted state proceedings satisfy the following requirements: (1) the judicial or judicial-in-nature state proceedings are ongoing; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges. See Middlesex Ethics Comm'n, 457 U.S. at 432, 102 S.Ct. at 2521.
 
 C.
 
 14
 In each of the above categories in which the Younger principle has been extended from the facts of the original case, it is apparent that the concerns of comity and federalism underlying Younger are present. When a federal court is deciding whether Younger abstention is appropriate in a particular case, it must determine that both the relief sought and the ongoing state proceedings warrant the application of the Younger principle.
 
 
 15
 In the case now before us, we will first examine the relief sought to determine whether disposition by the federal court will unduly interfere with the ongoing state proceedings. The suit in federal court alleges constitutional violations of employees by the drug testing program and requests monetary and injunctive relief based thereon. The pending state unfair labor practice proceeding involves the duty to bargain and other labor law issues. The pending state arbitration proceeding involves an interpretation of the parties' collective bargaining agreement to determine whether the program violated the agreement. It is apparent that the issues in the federal suit are substantially different from the issues in the state proceedings. The relief requested in federal court, if granted, would not unduly interfere with the state proceedings. Thus, the comity and federalism concerns of Younger are not applicable to this case. We hold that the district court erred in dismissing the plaintiffs' claims based on Younger abstention. See Carras v. Williams, 807 F.2d 1286, 1290 (6th Cir.1986) ("Because these claims [in federal court] sought neither to interrupt nor to challenge the propriety of the pending Michigan state court suit, we hold that the district court erred in abstaining from them").[4]
 
 II.
 
 16
 Our inquiry is not yet complete, however, because we may affirm a dismissal by the district court on any ground which is supported by the record. See Jacobson v. Village of Northbrook, 824 F.2d 567, 568 n. 3 (7th Cir.1987); Martinez v. United Auto., Aerospace & Agricultural Implement Workers, 772 F.2d 348, 353 (7th Cir.1985). The defendants now urge us to dismiss the claims for monetary damages and make-whole relief because of the state's eleventh amendment immunity and the inapplicability of Sec. 1983 to state officials acting in their official capacities. The plaintiffs here clearly sued the named state officials in their official capacities under Sec. 1983. Indeed, the complaint alleges that "[d]efendants Lane and Tristano have authorized and implemented the Drug Abuse Program under the color of their authority as state officials...." Under the Supreme Court's decision in Will v. Michigan Dept. of State Police, --- U.S. ----, ----, 109 S.Ct. 2304, 2311-12, 105 L.Ed.2d 45 (1989), this is precisely the type of allegation, when made for damages or retroactive relief,[5] that is treated as an allegation against the state itself and therefore is not against a "person" as required under Sec. 1983. We therefore affirm the dismissal of the claims for monetary and retroactive relief.
 
 III.
 
 17
 For the foregoing reasons, we AFFIRM the dismissal of the claims for monetary and retroactive relief and REVERSE and REMAND the dismissal of the other claims.
 
 
 
 [1]
 The State Labor Relations Board rendered its decision on the Union's unfair labor practice charge on September 29, 1988. Soon thereafter, the Union appealed the decision to the Illinois Appellate Court. The appeal was pending when this case was argued
 
 
 [2]
 The named plaintiff-appellant, Candice Crooks, is a worker who was laid off and allegedly was required to take a drug test before returning to work
 
 
 [3]
 The Supreme Court has not reached the issue of whether the Younger principle applies when only money damages are sought in federal court. Deakins v. Monaghan, 484 U.S. 193, 202, n. 6, 108 S.Ct. 523, 529 n. 6, 98 L.Ed.2d 529 (1988)
 
 
 [4]
 The arguments made by the defendants both in the district court in support of their motion to dismiss and in their briefs to this court essentially address only the second determination--whether the pending state proceedings invoke the Younger principle. Because we have found that the relief sought does not invoke the Younger principle, we do not decide whether the pending state proceedings would warrant abstention
 
 
 [5]
 A state official sued for prospective relief in his or her official capacity is a person under Sec. 1983. Will, --- U.S. at ---- n. 10, 109 S.Ct. at 2311 n. 10. Therefore, the claims for prospective relief survive the motion to dismiss