**The REPUBLICAN PARTY OF ADAMS COUNTY, MISSISSIPPI, Appearing Herein By Jack Stevens, Individually and as Chairman of the Executive Committee Thereof, and David Huber, Thomas Sanders, and Kenneth Davis, all Candidates for Supervisor from Various Districts on Adams County, Mississippi, Plaintiffs,**

**v.**

**The ADAMS COUNTY ELECTION COMMISSION, Composed of Catherine Meng, Larry Gardner, Ruby Johnson, Katie Dukes, and Mabel McMillan, the Democratic Executive Committee of the Democratic Party of Adams County,**

---

**9.** The Status of Account statements issued in December 1986 reflected the billing amounts for February and May 1985.

Mississippi, the Board of Supervisors of Adams County, Mississippi, Composed of Samuel Cauthen, Walter Salmon, Thomas Campbell, Phillip West, and Maxie Wallace, and Charles Sanders, Defendants.

Civ. A. No. W91–0072(B).

United States District Court, S.D. Mississippi, W.D.

Oct. 24, 1991.

Lucien C. Gwen, Jr., Natchez, Miss., for plaintiffs.

Thomas M. McNeely, Jr., Natchez, Miss., for Adams County Democratic Exec. Com'n.

Joseph Daniel Jaber, Natchez, Miss., for Sanders.

Robert C. Latham, Adams Forman Truly Smith & Bramlette, Natchez, Miss., for Adams County Election Com'n.

Joseph S. Zuccaro, Natchez, Miss., for Adams County, Miss.

## MEMORANDUM OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court, pursuant to Rules 15 and 65 of the Federal Rules of Civil Procedure, on Plaintiffs' Motions to Amend the Complaint and for Preliminary and Permanent Injunctive Relief to enjoin

the enforcement of certain orders of the Chancery Court of Adams County, Mississippi, establishing an election schedule for 1991 Adams County Board of Supervisors elections. A hearing on the Motions was held before this Court on September 10, 1991, at which time all parties to this suit presented evidence and arguments in support of their various positions. The Court, having considered such evidence and arguments, now renders the following findings of fact and conclusions of law.

## I. FACTS AND PROCEDURAL HISTORY

Adams County, Mississippi, like all counties within the State of Mississippi, is divided into five supervisors' districts. The qualified electors of each district elect a member of the Board of Supervisors to serve a four year term of office. The Board of Supervisors is responsible for the governance of Adams County. In addition to other duties, the Board of Supervisors is responsible for the drawing of district boundaries by which elections for supervisors are governed. *See* Miss. Code Ann. § 19–3–1 (Supp.1991).

In the Spring of 1991, the Adams County Board of Supervisors received new 1990 United States Census figures for the county. Thereafter, the Board of Supervisors adopted a redistricting plan for Adams County supervisors' districts which was to be used in elections that were scheduled to take place in the Fall of 1991. Pursuant to section 5 of the Voting Rights Act of 1965,[1] the redistricting plan was submitted to the United States Justice Department for preclearance. By letter dated July 30, 1991, the Justice Department asked for additional information and declined to pre-

clear the redistricting plan that had been submitted until such time as several issues had been satisfactorily addressed. No response to this request had been made by the Adams County Board of Supervisors as of the hearing date in this case.

On August 14, 1991, Charles Sanders, a resident citizen and registered voter of District Three, Adams County, Mississippi, filed a suit in the Chancery Court of Adams County, Mississippi, against Adams County, Mississippi, the Adams County Democratic Executive Committee, the Adams County Republican Executive Committee, and the Adams County Election Commission. In that suit, Sanders sought a declaratory judgment that the redistricting plan submitted by the Board of Supervisors to the United States Justice Department had not been precleared as required by section 5 of the Voting Rights Act of 1965 and that the existing district plan which had been in effect since 1983 was violative of one-man, one-vote principles as guaranteed by state and federal law. Sanders further sought preliminary and permanent injunctive relief that would enjoin the holding of supervisors' elections under the existing plan or under any other redistricting plan that had not been precleared pursuant to section 5. Finally, Sanders sought an order of the chancery court rescheduling the qualifying deadline, party primaries, and general and special elections for supervisors until such time as a redistricting plan had been precleared by the Justice Department.

Sanders' suit was tried before the chancery court on expedited notice on August 22, 1991. All defendants in that suit appeared and moved to have the suit dismissed on the basis that the chancery court lacked jurisdiction to consider issues aris-

---

**1.** Section 5 of the Voting Rights Act of 1965 provides in relevant part:

> Whenever a [covered] State or political subdivision ... shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964, ... such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that such qualification, prerequisite, standard,

> practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color.... Provided, That such qualification, prerequisite, standard, practice, or procedure may be enforced without such proceeding if the qualification, prerequisite, standard, practice, or procedure has been submitted ... to the Attorney General and the Attorney General has not interposed an objection....

42 U.S.C. § 1973c.

ing under section 5 of the Voting Rights Act where no collateral issue or cause of action was raised over which the chancery court otherwise held competent jurisdiction. Defendants also asserted that the chancery court lacked subject matter jurisdiction over "political" matters, that jurisdiction being reserved exclusively for circuit courts under state law.

In an opinion issued August 26, 1991, and a companion order entered the next day, the chancery court found that the existing supervisors' districts for Adams County, Mississippi were impermissibly malapportioned. Specifically, the court found that, because as much as a twenty-one per cent variance existed between the populations of various supervisors' districts, the existing plan clearly violated the affirmative duty imposed by Miss. Code Ann. § 19-3-1 (Supp.1991) to equally apportion supervisors' districts. With regard to the jurisdictional issues that had been raised by the defendants in the action, the court did not directly address whether it was the proper court under state law to hear the controversy. The court did find, however, that state courts have concurrent jurisdiction with federal courts to hear claims arising under section 5 of the Voting Rights Act.

As a remedy for the malapportionment violation that the court found to exist under the existing supervisors' districts, the chancellor enjoined the primary, runoff, and general elections for Adams County supervisors that were scheduled to occur under state law on September 17, 1991; October 8, 1991; and November 5, 1991, respectively. Instead, the chancellor ordered that redistricting plans be submitted to the court by August 28, 1991, for review and that a proposed plan then be submitted to the United States Justice Department by September 5, 1991. Because of the delay in submitting a redistricting plan to the Justice Department, the chancellor further ordered that the first primary for supervisor elections be rescheduled for November 5, 1991, and the second primary be held on November 19, 1991. Under the schedule adopted by the chancery court, newly elected supervisors would be able to take office as previously scheduled in January of 1992.

Following entry of the chancellor's opinion and order, a timely appeal was taken to the Mississippi Supreme Court.

On August 29, 1991, the instant action was filed by the Republican Party of Adams County as well as several individual candidates for supervisor. In their Complaint, Plaintiffs sought a declaratory judgment that the opinion and order of the chancery court constituted a change in voting practice and procedure such that it could not be implemented without first being precleared pursuant to section 5 of the Voting Rights Act. On that basis, Plaintiffs sought preliminary and permanent injunctive relief from this Court that would enjoin implementation of the chancery court orders and would mandate the holding of elections for Adams County supervisors under the existing supervisors' districts on the primary, runoff, and general election dates provided under state law. On the same date that the lawsuit was filed, a three judge panel was constituted to hear the section 5 issues raised in the Complaint.

## II. CONCLUSIONS OF LAW

### A. Motion to Amend the Complaint

As this case came before the Court for oral argument on September 10, 1991, the Court was advised that the opinion and order of the Chancery Court of Adams County had been precleared pursuant to section 5 of the Voting Rights Act by the United States Department of Justice. Plaintiffs concede that preclearance of the chancery court opinion and order effectively mooted the only substantive issue raised in the original Complaint. *See Gresham v. Harris*, 695 F.Supp. 1179, 1182–84 (N.D.Ga. 1988) (holding that state court orders that enact changes in a voting practice or procedure within the purview of section 5 must be precleared before such orders can be enforced).

■ Plaintiffs seek, however, to amend their Complaint to assert that the chancery court was without jurisdiction to hear the

state court controversy because of exclusive federal jurisdiction over section 5 issues and because of exclusive circuit court jurisdiction under state law over "political" matters. Because Rule 15(a) of the Federal Rules of Civil Procedure expressly provides that leave to amend pleadings should "be freely given when justice so requires," and because the Court finds that no prejudice would result to Defendants if the amendment were allowed, the Court finds that Plaintiff's Motion to Amend the Complaint is well taken and should therefore be granted.

### B. Motion for Preliminary and Permanent Injunctive Relief

Turning to Plaintiff's Motion for Preliminary and Permanent Injunctive Relief,[2] the Court initially notes that, in order to demonstrate an entitlement to injunctive relief, the Plaintiffs must establish that: (1) a substantial likelihood exists that plaintiff will prevail on the merits; (2) plaintiff will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendants; and (4) granting the injunction will not disservice the public interest. *See Canal Authority of State of Florida v. Callaway,* 489 F.2d 567, 572–73 (5th Cir.1974).

In considering whether Plaintiffs have established a likelihood of success on the merits in this action, the Court must consider the jurisdictional argument added to this lawsuit by the amendment to the Complaint allowed above. As the Court has previously noted, Plaintiffs contend that the chancery court lacked jurisdiction to consider the issues raised in the earlier state court proceeding on the bases that: (1) the chancery court could not consider issues arising under section 5 of the Voting Rights Act where no collateral issue or cause of action was raised over which the chancery court otherwise had jurisdiction; and (2) the chancery court lacks jurisdiction over "political" matters, that jurisdiction being exclusively reserved for the circuit courts under state law. Accordingly, Plaintiffs contend that the opinion and order of the chancery court are void and should be given no effect, thus clearing the way for this Court to recognize that Adams County supervisors' elections should take place under existing districts on those primary and general election dates set under state law.

### (1) Jurisdiction to Consider the Applicability of Section 5 of the Voting Rights Act

With regard to the section 5 jurisdictional issue, the Court notes that the United States Supreme Court in *Hathorn v. Lovorn,* 457 U.S. 255, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982) held that state courts may determine, as a collateral matter, whether section 5 applies to contemplated changes in election procedure. *Hathorn,* 457 U.S. at 268, 102 S.Ct. at 2429. Noting that neither the language of nor the legislative history relevant to the Voting Rights Act suggested that Congress intended federal courts to be the exclusive domain for determining when section 5 was applicable to a change in voting practice or procedure, the Court concluded that, even if it were to assume exclusive federal jurisdiction existed over the issue of section 5 applicability, the exclusive nature of that jurisdiction would not prevent a state court from considering section 5 issues collaterally. *Id.* at 266, 102 S.Ct. at 2428 (citing *Gulf Offshore Co. v. Mobil Oil Corp,* 453 U.S. 473, 483 n. 12, 101 S.Ct. 2870, 2878 n. 12, 69 L.Ed.2d 784 (1981)); *see also Pendleton v. Heard,* 642 F.Supp. 940, 943 (S.D.Miss.1986), *rev'd on other grounds* 824 F.2d 448 (5th Cir. 1987).

---

**2.** Because this lawsuit was originally premised upon a section 5 claim, in that Plaintiffs contended that the chancellor's order could not be enforced without preclearance, a three judge panel was constituted to hear this matter. As this Court has previously noted, the chancellor's order was ultimately precleared, thus mooting the section 5 issue. Because the applicability of section 5 to the court orders at issue in this suit no longer remains a viable issue in this controversy, resort to the three judge panel is not necessary and all remaining issues can be considered by the managing district judge to whom this matter is assigned.

Plaintiffs attempt to circumvent the holding of *Hathorn* by arguing that no separate issue or claim existed in the state court action to which the section 5 issue could collaterally attach. Because the chancery suit involved only the issue of supervisors' elections and did not in any way assert any claim independent of the election controversy, Plaintiffs contend that the state suit merely presented one generic "voting" issue for the court's consideration. Because a voting practice was the only issue before the court in the state action, Plaintiffs assert that there was no collateral issue to which a section 5 issue could attach. The Court finds this position untenable. While the state court action did contest a single election, that lawsuit was based upon several claims which stood independent of each other as bases for challenging the proposed election. As this Court has previously noted, the primary claim advanced by the plaintiff in the state court action was voting malapportionment which he contended was in violation of the one-man, one-vote standard guaranteed by Article 3, Section 14 of the Mississippi Constitution, Miss. Code Ann. § 19–3–1 (Supp. 1991), and the fourteenth amendment to the United States Constitution. This claim is sufficient to stand as an independent ground for challenging an election procedure. Collateral to this claim, the state court plaintiff also asserted that any election conducted pursuant to newly drawn district lines would be in violation of section 5 of the Voting Rights Act. When viewed in this light, it is clear that any section 5 issues that the chancery court considered were separate and distinct from the claim that the one-man, one-vote standard had not been met. This Court therefore finds that a claim collateral to the section 5 issue did exist in the state court controversy and that, accordingly, that state court properly assumed jurisdiction over the section 5 issue pursuant to the holding of *Hathorn*.

In addition, the Court notes that, were it to accept Plaintiffs' contention that the chancery proceeding merely represented one generic voting claim and that, consequently, the state court could not consider section 5 issues, it would be placing the state court in a most untenable position. Assuming that the state court were to find a violation of the one-man, one-vote standard and to issue remedial relief on that basis, the state court would not be able to consider whether the relief it had ordered would be in violation of section 5 if Plaintiffs' contention were correct. This Court can imagine no rule of law more disruptive of the legal process than one which would require a court to issue relief and yet deny that court the opportunity to consider whether any relief so ordered was in fact lawful. "State courts, like federal courts, have a constitutional obligation ... to uphold federal law." *Stone v. Powell*, 428 U.S. 465, 494 n. 35, 96 S.Ct. 3037, 3052 n. 35, 49 L.Ed.2d 1067 (1976). The Court is unable to discern how this result would in any way foster compliance with the policies embodied in the Voting Rights Act or the preclearance scheme that has been established to ensure that those policies are given full effect.

The Court therefore finds that there did exist in the state court action a separate issue to which the section 5 issue could collaterally attach. Consequently, the Court concludes that Plaintiffs have failed to demonstrate a likelihood of success on the merits of this jurisdictional argument and that injunctive relief on this basis will accordingly be denied.

### (2) State Court Jurisdiction Over Political Matters Under Mississippi Law

The Court next considers Plaintiffs' contention that, under state law, the chancery court did not have jurisdiction to consider "political" matters, thus rendering the state court's orders void. This Court concludes, however, that it should abstain from considering this issue under the principles of federalism enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Younger* and its progeny "espouse a strong federal policy against federal court interference with pending state court judicial proceedings absent extraordinary circumstances." *Mid-*

*dlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 431, 102 S.Ct. 2515, 2520, 73 L.Ed.2d 116 (1982). *Younger* abstention is based upon the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 601, 95 S.Ct. 1200, 1206–07, 43 L.Ed.2d 482 (1975) (quoting *Younger,* 401 U.S. at 44, 91 S.Ct. at 750).

*Younger* abstention has been held to bar federal consideration of certain claims where three criteria are met: (1) an ongoing state judicial proceeding concerning the same claim exists; (2) an important state interest is raised by the claim; and (3) an adequate opportunity exists in the state proceeding to raise the claims asserted in the federal lawsuit. *Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521. The Court finds that all three of the criteria for application of *Younger* abstention are met under the facts of this case. As the Court has previously noted, an appeal of the chancery court opinion and order was immediately taken to the Mississippi Supreme Court. The issue of chancery court versus circuit court jurisdiction over "political" matters has squarely been placed before the Mississippi Supreme Court in that appeal. Thus, an ongoing state judicial proceeding clearly exists with regard to the jurisdictional issue that Plaintiffs continue to press in this forum. On that basis, the Court finds that the first and third criteria for application of *Younger* abstention have been met.

The court also finds that the issue of jurisdictional boundaries as between competing state courts clearly raises an important state interest. The United States Supreme Court has previously found occasion to apply *Younger* abstention where federal courts have been asked to consider the validity of a state's judicial contempt and judgment lien processes. *See Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). Noting the state's interest in protecting " 'the authority of [it's] judicial system, so that its judgments and orders are not rendered nugatory,' " *see Pennzoil,* 481 U.S. at 14 n. 12, 107 S.Ct. at 1527 n. 12 (quoting *Juidice,* 430 U.S. at 336 n. 12, 97 S.Ct. at 1218 n. 12), the Court concluded in both instances that federal consideration of issues related to state court procedures was an unwarranted intrusion into areas of significant state interest. Likewise, this Court can think of no area of greater state interest than a state's interest in determining the jurisdictional boundaries of its own state courts. Accordingly, the Court finds that the state interest criteria for the application of *Younger* abstention has been demonstrated.

■ Based on the foregoing analysis, the Court concludes that *Younger* abstention applies to that count of Plaintiffs' Complaint asserting jurisdictional defects under state law.[3] Accordingly, that count of the Complaint is hereby dismissed.

## III. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Amend the Complaint is hereby granted.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Preliminary and Permanent Injunctive Relief is hereby denied.

IT IS FURTHER ORDERED that those allegations of the Complaint asserting jurisdictional defects in the chancery court proceeding on the basis of state law are

---

**3.** While it could be argued that *Younger* abstention should apply to the section 5 jurisdictional issue as well, the Court finds that one critical distinction exists with regard to that claim. The issue of whether state courts enjoy concurrent or collateral jurisdiction to hear section 5 issues necessarily requires a consideration of the jurisdiction of federal courts to hear those issues as well. Because of the strong federal interest this Court retains in considering the bounds of its own jurisdiction, the Court concludes that *Younger* does not preclude this Court's consideration of the section 5 claim.

hereby dismissed on the grounds of *Younger* abstention.

SO ORDERED.