James D. WILSON, Plaintiff,

v.

A. Raymond UTTARO, Individually and as Commissioner of Jurors of Monroe County, and all his agents, employees and successors in interest, Defendant.

No. CIV–85–1312T.

United States District Court, W.D. New York.

Dec. 16, 1985.

James D. Wilson, pro se.

Charles R. Valenza, Co. Atty., for Monroe County, Rochester, N.Y., for defendant.

DECISION and ORDER

TELESCA, District Judge.

Plaintiff, James D. Wilson, is an African-American male, and is presently a pre-trial

detainee awaiting disposition of a pending Monroe County Grand Jury indictment. In a *pro se* civil rights complaint filed with this Court, Wilson alleges that the defendant, A. Raymond Uttaro, in his official capacity as Commissioner of Jurors of Monroe County, has engaged in unconstitutional practices resulting in the under representation of certain groups from Monroe County jury pools: namely, "women, native Americans, African-Americans, Hispanic Americans, students and other ethnic minorities." (Plaintiff's complaint ¶ 7.) More specifically, Wilson asserts that defendant Uttaro has developed a policy of allowing members of those groups to obtain "hardship excuses" from jury service "by simply asserting a claim to have an economic hardship." (Plaintiff's complaint ¶ 8.) Wilson argues that this practice violates the constitutional rights he enjoys both as a potential juror, and as a criminal defendant.

After a review of the affidavit of poverty submitted by Wilson, I find that plaintiff should be permitted to file his complaint *in forma pauperis*, pursuant to 28 U.S.C. § 1915(a). For the reasons that follow, however, the complaint is dismissed as frivolous within the meaning of § 1915(d).

## DISCUSSION

### I.

In his first cause of action, Wilson alleges that he is denied equal protection of the law, in violation of the Thirteenth and Fourteenth Amendments of the United States Constitution, by the fact that he and other ethnic minority members are arbitrarily and systematically excluded from jury service in Monroe County. Accepting the allegations of his complaint as true, that argument is totally frivolous, since the "systematic exclusion" he describes in his complaint is entirely *voluntary*. Wilson makes no allegation that women and ethnic minorities are less likely to be summoned for jury service, or that they are the "victims" of any discriminatory policy of intentional exclusion. On the contrary, by Wilson's own admission, those minority groups are under-represented in Monroe County

juries because they are the beneficiaries of a policy which allows them more favorable treatment in obtaining "hardship excuses" from jury service. Any minority member who refuses to accept the benefit of this unequal treatment need only refrain from requesting a voluntary exclusion from jury service.

■ Since Wilson and the other ethnic minority members described in his complaint have not been personally injured by the "unequal" treatment of the law which allegedly makes it easier for them to voluntarily avoid jury duty, Wilson lacks standing to assert an equal protection challenge to the practice. *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), *rehearing denied*, — U.S. ——, 105 S.Ct. 51, 82 L.Ed. 942 (1984). Nor may Wilson assert standing on behalf of those white males who allegedly face greater difficulty (and are perhaps denied equal protection of the law) in their attempts to obtain excuses from jury duty. In a case such as this, plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

### II.

■ Wilson's second cause of action challenges the defendant's practices from another angle. Wilson argues that the alleged exclusion of women and ethnic minorities from jury service deprives him of the right to have his upcoming criminal trial heard by a jury which is representative of a clear cross-section of the community. (Complaint ¶ 11.) This claim is surely much more substantial, even if those minorities are voluntarily excluded. In *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the Supreme Court struck down a state statute that exempted women from jury duty upon their request for an exemption. The Court stressed that "the constitutional guarantee to a jury drawn from a fair cross-section of the com-

munity requires that States exercise proper caution in exempting broad categories of persons from jury service." *Id.*, at 370, 99 S.Ct. at 671. Thus, a state is not permitted by the Sixth Amendment to grant exemptions from jury service in a manner which will restrict unreasonably the possibility that the petit jury will comprise a fair cross-section of the community. *McCray v. Abrams*, 750 F.2d 1113, 1129 (2d Cir. 1984) (dictum), *rehearing en banc denied*, 756 F.2d 277 (2d Cir.1985).

Although Wilson's second cause of action poses a substantial constitutional question and a live case or controversy for federal adjudication, the circumstances of this case naturally implicate "the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." *Mitchum v. Foster*, 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972). The Supreme Court has repeatedly stated that, "in view of the fundamental policy against federal interference with state criminal prosecutions", such injunctive relief may only be granted to avoid irreparable injury which is "both great and immediate." *Younger v. Harris*, 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971).

■ It is clear that the allegations of Wilson's complaint, liberally construed in his favor, could not possibly establish the irreparable injury required for federal injunctive relief from his pending state criminal proceeding. He does not allege (nor could he) that he or any other party has been, or later may be, inhibited or prevented from engaging in constitutionally protected conduct by their fear of the prospect of being tried before an unrepresentative jury. On the contrary, if federal injunctive relief is denied at this juncture, the only potential injury faced by plaintiff is that he would be required to raise his constitutional claims in his state court trial before returning to federal court. Wilson asserts that this prospect amounts to irreparable injury, since it "would be attended by ... uncertainties and delays." (Complaint ¶ 12). As the Supreme Court has stated, however,

> Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered "irreparable" in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.

*Younger, supra*, 401 U.S. at 46, 91 S.Ct. at 751.

Under the facts of this case, the same principle also counsels against the issuance of a federal declaratory judgment while a state proceeding is pending, since the intrusive effect of declaratory relief "will result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid". *Samuels v. Mackell*, 401 U.S. 66, 72, 91 S.Ct. 764, 767, 27 L.Ed.2d 688 (1971). Considerations of equity, comity and federalism preserve their vitality as long as state criminal proceedings are still pending against plaintiff, since federal intervention, through either declaratory or injunctive relief, would "result in duplicative legal proceedings or disruption of the state criminal justice system". *Steffel v. Thompson*, 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974).

Accordingly, Wilson's request for declaratory and injunctive relief must be denied at this time. Wilson may raise his federal constitutional challenges to the jury panel in the state criminal proceeding, by way of a written objection pursuant to New York Criminal Procedure Law § 270.10. At the conclusion of the state criminal proceedings, Wilson will be entitled to collateral federal habeas review if he brings a timely challenge to the jury panel under C.P.L. § 270.10, as long as his objection "plainly and unambiguously" notified the state courts of his federal constitutional claim. *Alburquerque v. Bara*, 628 F.2d 767, 774 (2d Cir.1980).

## CONCLUSION

This Court is empowered by 28 U.S.C. § 1915(d) to dismiss *sua sponte* a *pro se* civil rights complaint which, when liberally construed, is conclusively foreclosed by statute or controlling precedent. *Love v. Coughlin*, 714 F.2d 207 (2d Cir.1983). Such is the case here. Accordingly, although Wilson is hereby granted leave to file his complaint *in forma pauperis*, the complaint is dismissed as frivolous.

SO ORDERED.