**James D. WILSON, Individually and on behalf of all others similarly situated, Plaintiff,**

v.

**H. Christian DE BRUYN, Superintendent, Monroe County Jail; Andrew P. Meloni, Sheriff, Monroe County; Mr. William McMahon, Chairman, New York State Commission of Correction; Robert Abrams, Attorney General, State of New York, Defendants.**

**No. CIV–85–1499T.**

United States District Court,
W.D.N.Y.

April 28, 1986.

Harris, Beach, Wilcox, Rubin & Levey (Edward H. Fox, of counsel), Rochester, N.Y., for plaintiff.

Charles H. Miller, III, Carlos Rodriguez, Asst. Atty. Gen., State of N.Y., Rochester, N.Y., for defendants.

## DECISION and ORDER

TELESCA, District Judge.

In this civil rights action brought under 42 U.S.C. § 1983, James D. Wilson seeks to represent a class of all pre-trial detainees at the Monroe County Jail who have been denied permission to appear at pre-trial hearings in their civilian clothing. He contends that this practice deprives him of numerous federal and state constitutional rights, including his rights to due process of law, equal protection, and freedom of expression. His principal contention is that his appearance in a jail-issued jumpsuit weakens his constitutional presumption of innocence and undermines the fairness of the fact finding process, because of its prejudicial influence on the judge, witnesses, complainants, the defendant himself, and the public at large. Plaintiff also seeks to represent a "subclass" of detain-ees who were unconstitutionally deprived of their liberty when they were forced to return to the Jail while still in their jumpsuits to pick up their civilian clothing after charges against them were dismissed. Wilson now moves this Court for a judgment declaring defendants' actions unconstitutional, and a preliminary injunction enjoining them from requiring pre-trial detainess to wear these jumpsuits to any further court appearances.

## BACKGROUND

Following a jury trial in late 1982, James D. Wilson was found guilty of robbery in the first and second degree and grand larceny in the second degree, in connection with an armed robbery which occurred on September 12, 1981. On January 29, 1985, the judgment of conviction was reversed and a new trial ordered by the Appellate Division of the New York State Supreme Court. *People v. Wilson,* 106 A.D.2d 146, 484 N.Y.S.2d 733 (4th Dept.1985), *leave to appeal denied,* 65 N.Y.2d 702, 481 N.E.2d 271 (1985). Wilson was returned to the Monroe County Jail three weeks later, where he remains pending his upcoming retrial.

Between February 22 and August 9, 1985, Wilson appeared 13 times in Rochester City Court. On each occasion, Wilson was required to appear in a standard jumpsuit issued by the Monroe County Jail, despite his repeated requests to jail officials for permission to wear his personal clothing. The Monroe County defendants concede that it is the policy of the Monroe County Jail to require inmates to attend many pre-trial proceedings in jail clothing, ostensibly to make them more easily identified and thereby reduce the risk of escape (Affidavit of Major Edward Blodgett).

Although Wilson's requests to wear his own clothing to court appearances were denied by officials at the Monroe County Jail, he does not allege that he ever attempted to obtain an order granting him such permission from any Rochester City Court judge. Nevertheless, on September 19, 1985, five of the six judges of the City

Court of Rochester signed a letter addressed to Sheriff Meloni, requesting that "all unsentenced prisoners, henceforth, be brought to our courts in their own clothing" (Plaintiff's Exhibit F). Wilson alleges that the Sheriff's Department has refused to honor this request, although it does not appear from the record that he has ever sought to obtain an order to that effect in his own case, nor that he personally has ever appeared in City Court at any time since that letter was signed.

## DISCUSSION

### I. *Standing*

█ Before turning to the question of whether this Court must abstain from exercising jurisdiction over Wilson's main claim, I am first obliged to inquire whether he has standing, as a matter of the case or controversy requirement associated with Article III of the Constitution, to seek the injunctive relief he requests from this Court. *Juidice v. Vail*, 430 U.S. 327, 331, 97 S.Ct. 1211, 1215, 51 L.Ed.2d 376 (1977). Wilson maintains that pending pre-trial activity threatens his right to a fair trial, and also seeks to assert a collateral claim on behalf of another class of individuals to which he does not belong, just as he did in *Wilson v. Uttaro*, 623 F.Supp. 1158 (W.D.N.Y.1985), *appeal dismissed*, Docket No. 86–2017 (2d Cir. March 27, 1986).

According to his complaint (¶ 9), Wilson brings his central claims on behalf of the purported class of unconvicted defendants presently detained in the Monroe County Jail "who desire in the future to wear civilian clothing at all court appearances." He also seeks to represent a separate "subclass" of plaintiffs, which includes only those pre-trial detainees who have been released following the dismissal of all charges against them by a judge, but were required to return to the Jail to pick up their own clothing (¶ 10). It is self-evident that the latter group is not a "subclass" at all, but is rather a mutually exclusive class of individuals, which by definition cannot include any members of the main class. It is equally clear that Wilson himself is not even a member of the purported subclass, since the charges against him have not been dismissed, and so he has never been put to the inconvenience of returning to the Jail merely to pick up his civilian clothing.

Moreover, Wilson does not allege that he is likely to be released before trial. In view of the reasons for his present incarceration, that likelihood would appear to be rather remote, since the evidence against him was already deemed sufficient to proceed to trial once, and the Appellate Division reversed his conviction and granted him a new trial. A plaintiff has no standing to request "injunctive relief directed at certain system-wide law enforcement practices" where, as here, there appears to be no "specific threat of being subject to the challenged practices." *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 3330, 82 L.Ed.2d 556 (1984), *rehearing denied*, —— U.S. ——, 105 S.Ct. 51, 82 L.Ed.2d 942 (1984).

Wilson submits in his complaint that the temporary deprivation of liberty to those who have been released and must return to the Jail is the result of the same underlying jumpsuit policy that threatens his right to a fair trial. Consequently, he reasons, he may adequately represent the class, in satisfaction of the requirements of Federal Rules of Civil Procedure 23(a)(4). I do not reach that question, since Wilson is not even a member of the putative subclass. Accordingly, all of his claims allegedly on behalf of those who were forced to return to the Jail after being released (Claims 6, 7, 8 and 9 of the complaint) are barred by Article III of the United States Constitution, with its "general prohibition on a litigant's raising another person's legal rights." *Allen, supra*, 104 S.Ct. at 3325.

### II. *Abstention*

█ The heart of Wilson's complaint is his allegation that his court appearances in a jail issued jumpsuit readily identify him as a pre-trial detainee, in violation of his constitutional presumption of innocence, and result in prejudice that is likely to undermine his fundamental constitutional

right to a fair trial. Although the issue was raised by none of the parties, I must decide whether, with the existence of an available forum for the presentation of those constitutional issues in the pending state criminal proceedings, this Court can properly entertain jurisdiction over Wilson's § 1983 action in light of the Supreme Court's decisions in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny.

In *Younger v. Harris*, the United States Supreme Court emphasized the long-standing Congressional policy, subject to few exceptions, of allowing "state courts to try state cases free from interference by federal courts." 401 U.S. at 43, 91 S.Ct. at 750. The Court explained that the underlying reason for this policy is the notion of "comity," which requires a proper respect for the role of states and their institutions in our federal system of government. On the basis of those principles, the Court held that, in the absence of extraordinary circumstances, a district court may not enjoin the enforcement of even an unconstitutional state statute while the prosecution is pending in state court.

In at least one important respect, the injunctive and declaratory relief requested by Wilson in this case differs from that overturned in *Younger*. Wilson does not challenge the constitutionality of the criminal statutes he is charged with violating. He does not challenge in this Court the state's authority to prosecute him for those statutes, and does not ask that the trial be totally enjoined. Rather, he requests only that this Court intervene to protect his right to a fair trial, by ordering the defendants to allow him to appear at pre-trial proceedings in his own clothing.

As the Supreme Court has repeatedly reaffirmed, however, the *Younger* abstention doctrine does not rest entirely on respect for a state's interest in enforcement of its criminal laws. An equally significant dimension of the *Younger* holding is the respect for the integrity and competence of state judicial officials in adjudicating constitutional issues before them. As the Supreme Court recently explained in *Cabana v. Bullock*, — U.S. —, 106 S.Ct. 689, 699, 88 L.Ed.2d 704 (1986), the considerations of federalism and comity underlying *Younger v. Harris* reflect a recognition of the need for "respect for the ability of state courts to carry out their role as the primary protectors of the rights of criminal defendants." This deference rests on an acknowledgment of the state's "weighty interest in having valid federal constitutional criteria applied in the administration of its criminal law by its own courts." *Id.*, quoting *Rogers v. Richmond*, 365 U.S. 534, 548, 81 S.Ct. 735, 743, 5 L.Ed.2d 760 (1961). Quite apart from the state's interest in the enforcement of its criminal laws, therefore, the *Younger* abstention doctrine recognizes the state's equally significant right to provide a judicial forum for the vindication of federal constitutional claims. *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). *Younger* reflects a strong policy against federal intervention in any state judicial process, criminal or civil, since it rests fundamentally on the "threat to our federal system posed by displacement of state courts by those of the National Government." *Moore v. Sims*, 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979).

The policy of equitable restraint expressed in *Younger v. Harris*, in short, counsels against any federal intervention in pending legal proceedings under circumstances that could be interpreted "as reflecting negatively upon the state courts' ability to enforce constitutional principles." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975); *Steffel v. Thompson*, 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974). This deference may only be set aside if extraordinary circumstances "render the state court incapable of fairly and fully adjudicating the federal issues before it." *Kugler v. Helfant*, 421 U.S. 117, 124, 95 S.Ct. 1524, 1530, 44 L.Ed.2d 15 (1975). Yet minimal respect for state judicial officials "precludes any presumption that the state courts will not safeguard federal constitutional rights." *Middlesex County*

*Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 431, 102 S.Ct. 2515, 2520, 73 L.Ed.2d 116 (1982). "[W]e have full confidence in the ability of the state court judges, who are sworn to uphold the Constitution, to adjudicate federal constitutional claims properly." *Star Distributors, Ltd. v. Marino,* 613 F.2d 4, 8 n. 10 (2d Cir.1980).

In accordance with this deference to the vital interest of state courts in protecting the constitutional rights of criminal defendants, it is well settled that the *Younger* doctrine is fully applicable even where federal intervention would not bring the prosecution to a halt. Thus, for example, abstention is proper where the defendant in pending criminal proceedings requests only a declaratory judgment, *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), or when the district court is asked only to suppress the use of evidence obtained unlawfully. *Kugler, supra,* 421 U.S. at 129–130, 95 S.Ct. at 1533; *Breads v. Ellis,* 607 F.Supp. 1420 (W.D.N.Y.1985). "If the federal equity power must refrain from staying State prosecutions outright to try the central question of the validity of the statute on which the prosecution is based, how much more reluctant must it be to intervene piecemeal to try collateral issues." *Kugler, supra,* 421 U.S. at 130, 95 S.Ct. at 1533 (citation omitted).[1]

■ In accordance with the foregoing principles, a federal court should normally abstain from entertaining a claim by a state prisoner, such as those advanced here by Wilson, that the pretrial activities of state officials have "made it impossible for him to receive a fair trial in the state court system," *Kugler, supra,* 421 U.S. at 119, 95 S.Ct. at 1528, or have created "an unfair trial atmosphere." *Stefanelli v. Minard,* 342 U.S. 117, 123, 72 S.Ct. 118, 121, 96 L.Ed. 138 (1951). Thus, in *Martin v. Merola,* 532 F.2d 191 (2d Cir.1976), a case virtually indistinguishable from the one now before me, several defendants in pending New York criminal prosecutions sought federal relief under 42 U.S.C. § 1983, on the grounds that the pre-trial actions of county officials had undermined their presumption of innocence and their right to a fair trial. (In that case, the challenged act involved prejudicial press releases by the District Attorney.) Although the district court disposed of the action on the merits, the Court of Appeals *sua sponte* concluded that dismissal was required by *Younger v. Harris,* since "it would offend the principle of comity for a federal district court to inquire into plaintiffs' ability to secure a fair trial in a pending state prosecution." *Id.,* at 194–95. Yet that is precisely the inquiry which Wilson now asks this Court to undertake.

Despite the clear and substantial state interests threatened by federal intervention in Wilson's criminal trial, he does not allege the presence "of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex County, supra,* 457 U.S. at 435, 102 S.Ct. at 2522. Moreover, Wilson has never denied that the pending state proceedings afford him an adequate opportunity to raise his federal constitutional claims, and New York law appears to raise no procedural barriers. *See Moore v. Sims,* 442 U.S. 415, 430, 99 S.Ct. 2371, 2380, 60 L.Ed.2d 994 (1979).[2] "No more is required

---

1. Nor is *Younger* limited to injunctions directed against state officials. The same concerns are equally applicable in cases, such as this one, where the requested injunctive relief would be directed primarily at county law enforcement officers. *See, e.g., Huffman, supra* (federal court should abstain from enjoining sheriff from enforcing state civil nuisance statute); *Brache v. County of Westchester,* 658 F.2d 47, 54 (2d Cir.1981) (*Younger* applies "with special force to a challenge brought in federal court against the law enforcement authority of a local government."), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1643, 71 L.Ed.2d 874 (1982).

2. It may fairly be presumed that Wilson has an adequate opportunity to present his constitutional challenges in the state courts, in light of the fact that five city court judges had already indicated their willingness to entertain this constitutional issue before he brought it to this Court. *See Middlesex County,* 457 U.S. at 436, 102 S.Ct. at 2523. That fact also heightens the need for equitable restraint, since federal inter-

to invoke *Younger* abstention." *Juidice, supra,* 430 U.S. at 337, 97 S.Ct. at 1218; *Moore, supra,* 442 U.S. at 432, 99 S.Ct. at 2381.[3] Taken as a whole, the facts of this case provide no reason to deviate from the well-settled premise "that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Kugler, supra,* 421 U.S. at 124, 95 S.Ct. at 1530.

On the basis of *Younger v. Harris* and its progeny, therefore, I am compelled to abstain from exercising jurisdiction at this time over Wilson's federal claim that his pre-trial court appearances in a jail uniform may deny him a fair trial, and deprive him of liberty "without due process of law," in violation of the Fourteenth Amendment to the United States Constitution. The same conclusion would appear to follow with even greater force with respect to his claims under the Due Process Clause of the New York Constitution, Section VI of Article I, which Wilson concedes are more expansive than the protections of the Federal Due Process Clause. It is difficult to imagine a situation posing a greater threat to the integrity of state judicial processes than when a federal court is asked to supervise a pending proceeding in state court to ensure that it conforms with the requirements of the *state* constitution. *Cf. Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984) (principles of federalism underlying the Eleventh Amendment bar a federal court from ordering state officials to conform their conduct to state law).

In his remaining claims, Wilson contends that the jail jumpsuit policy for pre-trial detainees also violates his constitutional guarantees to equal protection, freedom of expression, and the assertion of his personal dignity. Abstention is also proper as to

those claims, given their similarity to his principal constitutional challenge. "In implementing the policy of noninterference, federal courts must focus upon the practical impact of any potential ruling." *Martin, supra,* 532 F.2d at 195 (applying *Younger* abstention to suit for damages); *see also, Samuels, supra,* 401 U.S. at 71–72, 91 S.Ct. at 767 (applying *Younger* to request for declaratory judgment). In light of the close connections between Wilson's several constitutional challenges, a ruling by this Court on any of those questions would constitute an unwarranted intrusion into the autonomy of the state judicial process. This conclusion is also supported by considerations of "sound judicial administration," which counsel against a partial invocation of *Younger* and duplication of legal proceedings where, as here, the district court is presented with a collection of attacks on a single policy "best suited to resolution in one forum." *Moore, supra,* 442 U.S. at 426 n. 10, 99 S.Ct. at 2379 n. 10.

CONCLUSION

For the reasons set forth above, Wilson's claims on behalf of those who were returned to the Monroe County Jail after being released (Claims 6 through 9) are all dismissed, on the grounds that he lacks standing to assert them. The remainder of Wilson's complaint is dismissed as premature, without prejudice to its renewal (if necessary) at the conclusion of state criminal proceedings. Although I do not question plaintiff's right to raise those federal claims in federal court, "that entitlement is most appropriately asserted by a state litigant when he seeks to *relitigate* a federal issue adversely determined in *completed* state court proceedings." *Huffman, supra,* 420 U.S. at 606, 95 S.Ct. at 1209. In dismissing the complaint, I express no position as to the merits of Wilson's claims. I

---

vention is far more intrusive where the state courts have already proven their willingness to entertain the constitutional question.

**3.** As long as Wilson has an opportunity to fairly pursue his federal claims in the ongoing state

proceedings, it is irrelevant whether those claims are technically cognizable "as a defense," *Moore, supra,* 442 U.S. at 430 n. 12, 99 S.Ct. at 2381 n. 12, or whether he has chosen to avail himself of those opportunities. *Juidice, supra,* 430 U.S. at 337, 97 S.Ct. at 1218.

leave that for determination where his case now lies—in state court.

SO ORDERED.