**Benjamin Barry KRAMER, Plaintiff,**

v.

**METRO–DADE CORRECTIONS AND REHABILITATION DEPARTMENT, et al., Defendants.**

**No. 93–0798–CIV.**

United States District Court, S.D. Florida.

May 28, 1993.

Robert A. Ginsburg, Dade County Atty., Robert G. Davies, Roy Wood, Asst. County Atty., Maureen Donlan, Asst. U.S. Atty., United States Attorney's Office, Miami, FL, Robert A. Butterworth, Atty. Gen., Kee Juen Eng, Asst. Atty. Gen., Dept. of Legal Affairs, Office of Atty. Gen., Hollywood, FL, for defendants.

Benson B. Weintraub, Neil M. Schuster, Benson B. Weintraub, P.A., Miami, FL, for plaintiff.

HIGHSMITH, District Judge.

## OMNIBUS ORDER

THIS CAUSE comes before the Court upon Plaintiff Benjamin Barry Kramer's Motion for Temporary Restraining Order, filed May 18, 1993; Plaintiff's First Status Report, filed May 25, 1993; Defendant's Response to Status Report, filed May 26, 1993; Defendants Metro–Dade Department of Corrections and Rehabilitation, Lonnie Lawrence, John Gnat, Denise Bendross and Eva Escalante's Motion to Dismiss, filed May 14, 1993; and Defendants Gary Rosenberg and Abraham Laeser's Motion to Dismiss, filed May 25, 1993. On May 26, 1993, the Court held a status conference and heard arguments from counsel about the various motions and posture of the case.

### FACTUAL AND PROCEDURAL BACKGROUND

Benjamin Kramer is a federal prisoner serving a mandatory term of life imprisonment without parole at the Leavenworth federal prison, for engaging in a continuing criminal enterprise, pursuant to his conviction under 21 U.S.C.A. § 848 in the United States District Court for the Southern District of Illinois. In March, 1993, Kramer was transferred to the Dade County Jail where he is awaiting trial in the Circuit Court in and for the Eleventh Judicial Circuit, Dade County, Florida, on charges of first degree murder. *See State of Florida v. Benjamin Barry Kramer,* Case No. F90–237328.

On April 27, 1993, Kramer filed this action, alleging deprivation of his civil rights and seeking declaratory and injunctive relief, damages, reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1983. Kramer names the following defendants in his complaint:

(1). *Metro–Dade Department of Corrections and Rehabilitation*

(2). *Lonnie Lawrence,* Director of Metro–Dade Department of Corrections and Rehabilitation

(3). *John Gnat,* Assistant Director of Jail Operations, Metro–Dade Department of Corrections and Rehabilitation

(4). *Denise Bendross,* Captain of the Pretrial Detention Center, Metro–Dade Department of Corrections and Rehabilitation

(5). *Lt. Escalante,* Shift Commander at Dade County Jail

(6). *Federal Bureau of Prisons*

(7). *Daniel J. Horgan,* United States Marshal

(8). *Hon. Leslie B. Rothenberg,* Circuit Court Judge in and for the Eleventh Judicial Circuit, Dade County, Florida

(9). *Gary Rosenberg, Esq.,* Assistant State Attorney in and for the Eleventh Judicial Circuit, Dade County, Florida

(10). *Abraham Laeser, Esq.,* Assistant State Attorney in and for the Eleventh Judicial Circuit, Dade County, Florida

In a nutshell, the complaint alleges that the defendants conspired to systematically and deliberately deprive Kramer of his constitutional rights as protected by the First, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution. The alleged object of this conspiracy is to "break down Kramer through intimidation, coercion and subtle psychological injury to induce a guilty plea" in the state criminal proceeding. (Complaint, D.E. # 1 at ¶ 27).

### YOUNGER ABSTENTION [1]

In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the United States Supreme Court held that "a federal court should not enjoin a state criminal prosecution begun prior to the institution of the federal suit except in very unusual situations, where necessary to prevent immediate irreparable injury." *Id.* The Supreme Court's decision was grounded on principles of equity and on notions of comity, to which it gave the name, "Our Federalism." *Watts v. Burkhart,* 854

F.2d 839, 844 (6th Cir.1988). "Our Federalism" represents "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger,* 401 U.S. at 44, 91 S.Ct. at 750. The notion of comity "includes a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n.,* 457 U.S. 423, 431–32, 102 S.Ct. 2515, 2520–21, 73 L.Ed.2d 116 (1982).

The *Younger* doctrine is also founded on the premise that the pending state court proceedings will provide an adequate forum for litigating federal issues. *The News–Journal Corp. v. Foxman,* 939 F.2d 1499, 1508 (11th Cir.1991). Specifically, *Younger* advises that, when state proceedings are pending, constitutional issues should be raised in that forum, unless it plainly appears that this course would not afford adequate protection. *Id.* at 1508. The policy of equitable restraint expressed in *Younger* counsels against any federal intervention in pending legal circumstances that could be interpreted "as reflecting negatively upon the state courts' ability to enforce constitutional principles." *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975).

Kramer does not dispute that the state criminal prosecution commenced prior to the filing of this § 1983 action. He argues, however, that the *Younger* abstention doctrine is inappropriate in this case because he does not actually seek to enjoin the pending state criminal trial. Clearly, the declaratory and injunctive relief requested by Kramer in this case differs, in at least one important respect, from that overturned in *Younger.* Kramer does not challenge the constitutional-

---

1. At the May 26, 1993 status conference, the Court heard arguments from counsel regarding the applicability of the *Younger* abstention doctrine to this matter.

ity of the criminal statutes he is charged with violating or the state's authority to prosecute him, and he does not ask that the criminal proceedings be totally enjoined.

It is well-settled, however, that the *Younger* abstention doctrine is fully applicable even where federal intervention would not bring the prosecution to a halt. "The *Younger* abstention doctrine does not rest entirely on respect for a state's interest in enforcement of its criminal laws. An equally significant dimension of the *Younger* holding is the respect for the integrity and competence of state judicial officials in adjudicating constitutional issues before them." *Wilson v. De Bruyn*, 633 F.Supp. 1222, 1225 (W.D.N.Y. 1986). Indeed, in a companion case to *Younger*, the Supreme Court held that the *Younger* abstention doctrine applies to actions for declaratory judgments, as well as actions for injunctive relief. *Samuels v. Mackell*, 401 U.S. 66, 73, 91 S.Ct. 764, 768, 27 L.Ed.2d 688 (1971).

In addition, a number of federal courts have held that the *Younger* abstention doctrine applies to situations where, as here, the plaintiff seeks declaratory and/or injunctive relief, as well as damages in a § 1983 civil rights proceeding. *See Mann v. Jett*, 781 F.2d 1448, 1449 (9th Cir.1986); *Foster v. Kassulke*, 898 F.2d 1144 (6th Cir.1990). *See also Wiggins v. Burge*, 1993 WL 157634, 1993 U.S.Dist. LEXIS 6594 (N.D.Ill. May 13, 1993) ("While neither the Supreme Court nor the Seventh Circuit have indicated whether a federal court should abstain in civil rights cases where plaintiffs seek damages for misconduct at issue in the underlying criminal case, most courts, including this Court, have held that damage actions such as that before us fall within the ambit of the *Younger* doctrine.").

In *Mann v. Jett*, 781 F.2d 1448 (9th Cir. 1986), the plaintiff was indicted and requested counsel, but was not appointed counsel until one year after he requested counsel. The plaintiff filed a § 1983 action for declara-

tory relief and monetary damages alleging denial of Mann's sixth amendment right to counsel. The district court granted summary judgment in favor of the defendants. On appeal, the Ninth Circuit held that the district court should have abstained because a § 1983 action involving a request for a declaratory judgment and a claim for damages has a substantially disruptive effect upon ongoing state criminal proceedings. The Ninth Circuit court warned that the potential for federal-state friction resulting from federal intervention is obvious, and concluded that a federal litigant can "adequately litigate in the ongoing state criminal proceedings his underlying claim of unconstitutional deprivation of counsel." *Id.*

Similarly, in *Barr v. Abrams*, 641 F.Supp. 547 (S.D.N.Y.1986), the court found that *Younger* abstention would be proper where a § 1983 civil rights action would bring the "wheels of state government to a halt." *Id.* at 554–55. In that case, the court held that "a damage action has the same capacity as a suit in equity to obstruct and interfere with the conduct of a criminal prosecution." *Id.* Specifically, the court found that the § 1983 suit would tie up time and resources of the participants in the criminal case. The court noted that:

> Protection from unconstitutional action by state prosecutors does not require a federal civil rights action. To the extent that the subject of state court criminal proceedings seeks protection from violations of his constitutional rights ... that protection is generally available by motion within the framework of the state proceeding.

*Id.* at 555.

The heart of Kramer's complaint is his allegation that a conspiracy between the presiding state court judge, the state prosecutors, and county and federal prison officials will result in prejudice that is likely to undermine his fundamental constitutional right to a fair trial.[2] As evidence of the conspiracy, Kramer notes that several of the allegedly

---

2. At the May 26, 1993 status conference, Kramer's counsel, Benson B. Weintraub, stated that Kramer would be willing to dismiss all claims if the undersigned District Judge would issue an order transferring Kramer to federal custody at the Metropolitan Correctional Center ("MCC"). The Court takes judicial notice of the fact that

MCC was the site of Kramer's ill-fated helicopter escape attempt in 1989. Given this factual background, the Court can appreciate the Bureau of Prisons reluctance to house Kramer at MCC absent a court order, a position expressed at the status conference by its counsel, Maureen Donlan. Kramer has failed to cite to the Court any

unconstitutional prison conditions were specifically imposed by Judge Rothenberg through various orders addressing phone conversations, counsel visitation policies, visitation policies and mail policies. For instance, on April 14, 1993, the state court issued an order setting forth the procedures that should be followed regarding legal mail. (Complaint, D.E. # 1 at Exhibit A). That order was issued after a hearing before Judge Rothenberg.

The *Younger* abstention doctrine, as applied to this case, suggests that it is simply not the role of this Court to supervise Judge Rothenberg's handling of the state criminal defendant. In implementing the *Younger* policy of non-interference, federal courts "must focus upon the practical impact of any potential ruling." *Martin v. Merola*, 532 F.2d 191, 195 (2nd Cir.1976). If this Court granted declaratory or injunctive relief to Kramer, the Court would become inextricably intertwined with the daily administration of the state criminal proceedings and the custody of the state defendant. "A federal court should normally abstain from entertaining a claim by a state prisoner that the pretrial activities of state officials have made it impossible for him to receive a fair trial in the state court system or have created an unfair trial atmosphere." *De Bruyn*, 633 F.Supp. at 1226. *See also Anderson v. Willett*, 1991 WL 275382, 1991 U.S.App. LEXIS 30538 (9th Cir. December 11, 1991) (Court dismissed § 1983 action brought against correctional officers while criminal proceedings against the defendant were pending in state court).

In addition, any findings of this Court in the § 1983 action may be *res judicata* in the

state criminal proceedings. *See Jones, Jones, Jones, and Wilborn v. Takaki, Three Unknown Police Officers, Cook County, and O'Malley*, 1993 WL 41420, 1993 U.S.Dist. LEXIS 1843 (N.D.Ill. Feb. 18, 1993) ("Most significantly, given the doctrine of res judicata, the basic policy against federal interference with pending state criminal prosecutions generally will be frustrated as much by a damages award as it would be by either declaratory relief or an injunction."). Certainly, any determination by this Court that Kramer had suffered a deprivation of his Sixth Amendment right to effective counsel would "poison the well," essentially casting serious doubts upon any conviction in the pending state criminal trial. As long as Kramer can seek protection of his constitutional rights within the framework of the state court system, this Court must abstain from interfering with the criminal proceeding.[3]

### CONCLUSION

Consequently, it is hereby

ORDERED AND ADJUDGED that:

(1). All claims for declaratory and injunctive relief against defendants are dismissed without prejudice because of this Court's invocation of the abstention doctrine.

(2). All claims for monetary damages against defendants are stayed pending the final outcome of the pending state criminal proceedings against Kramer.[4]

DONE AND ORDERED.

---

legal basis for the undersigned District Judge's issuance of such an order. Kramer's only authority, the Interstate Agreement on Detainers, provides that the custody of federal prisoners in a receiving state shall be effected by whichever custodial agreement may be approved by the custodian. 18 U.S.C.App. II § 2. *See also* Fla. Stat.Ann. § 941.45 (West Ann.1985 & Supp. 1983). In any event, as Kramer concedes, his transfer to Dade County Jail was not effected through the Agreement.

**3.** The defendants only requested that the Court abstain to counts 1, 2, 4, and 6 of the Complaint, on the grounds that the allegations in Counts 3 and 5 of the Complaint are sufficiently removed from the state criminal proceeding to permit

federal review. In both of these two counts, however, the presiding state court judge and the prosecutors are named as defendants. Consequently, this Court concludes that any further action regarding the allegations of unconstitutional medical treatment in Count 5 and unconstitutional restrictions on free exercise of religion in Count 3 would also result in impermissible interference with the pending state criminal proceeding.

**4.** In *Watts v. Burkhart*, 854 F.2d 839 (6th Cir. 1988), the Court addressed the proper course of action for a district court that chooses to apply the *Younger* abstention doctrine to a § 1983 action involving claims for declaratory and/or in-

junctive relief and damages. The claims for injunctive and/or declaratory relief should be dismissed, and any claims for damages should be stayed pending resolution of the pending state criminal proceedings. *Mann,* 854 F.2d at 849.