In the Matter of the Application of OTTER TAIL POWER COMPANY for an Order and Certificate of Public Convenience and Necessity to Provide Electric Service to the Bureau of Indian Affairs, at Belcourt, North Dakota.

**OTTER TAIL POWER COMPANY,**
Appellee,

v.

**NORTH DAKOTA PUBLIC SERVICE COMMISSION, and Baker Electric Cooperative, Inc., Appellants.**

Civ. No. 10653.

Supreme Court of North Dakota.

Aug. 20, 1984.

Ackre and Baer, Cando, for appellant, Baker Elec.; argued by Larry M. Baer, Cando.

Jay D. Myster, Fergus Falls, Minn., for appellee Otter Tail Power Co.; argued by Jay D. Myster, Fergus Falls, Minn.

Daniel S. Kuntz, Asst. Atty. Gen., Public Service Com'n, Bismarck, no appearance.

Stephen D. Little, Asst. Atty. Gen., Bismarck, and Ronald A. Hodge, Sp. Asst. Atty. Gen., Bismarck, for State of N.D., on brief only.

PEDERSON, Justice.

In November 1981, Otter Tail Power Company applied to the Public Service Commission (PSC) for authority, pursuant to § 49–03–01.1, NDCC, to extend its electric service about 100 feet to the site of a new Bureau of Indian Affairs (BIA) school building located near Belcourt. The school is not located within the corporate limits of any municipality but is within the boundaries of the Turtle Mountain Indian Reservation. Baker Electric Cooperative filed a consent to the grant of temporary authority but objected to a permanent certificate of public convenience and necessity. With its application Otter Tail filed a customer preference, executed by a representative of BIA.[1] The PSC granted temporary authority to Otter Tail and set a hearing on the matter of the application for a permanent certificate.

PSC jurisdiction was not questioned at the hearing nor was it considered when the PSC granted permanent authority to Otter Tail. A rehearing was requested and granted to Baker Electric. Again no one raised questions relating to PSC jurisdiction. After the rehearing, the PSC found that service by Baker Electric would be more reliable than service by Otter Tail; the economic benefit to Baker Electric would be greater than the economic benefit to Otter Tail; and to deny Otter Tail this certificate of authority would prevent "checkerboarding." The PSC reversed itself and denied permanent authority to Otter Tail. It did not grant Baker Electric authority. Otter Tail then requested another rehearing. It was denied, and Otter Tail appealed to the district court pursuant to the Administrative Agencies Practice Act (Ch. 28–32, NDCC). Specifications of error, as required by § 28–32–15, were filed.

In *Matter of Boschee*, 347 N.W.2d 331, 335 (N.D.1984), we held that on appeals of administrative agency decisions, courts may consider only those grounds specified —however, the grounds must come within the provisions of § 28–32–19.[2] The specifi-

---

1. Customer preference is only one factor to be considered. Syllabus 5, *Tri-County Electric Cooperative, Inc. v. Elkin*, 224 N.W.2d 785 (N.D. 1974). In this case the assistant area director for administration of the BIA office in Aberdeen informed Baker Electric: "The Bureau of Indian Affairs is obliged to purchase power from the utility company serving the area where the facility is located. In disputes, such as exists for the new school site, the Bureau will comply with the decision of the appropriate regulatory authority."

2. The permissible grounds upon which the administrative agency determination may be challenged, as listed in § 28–32–19, are:

"1. The decision or determination is not in accordance with the law.

cations of error filed by Otter Tail are extensive and detailed and include, for the first time, a claim that the PSC has no jurisdiction within the boundaries of the Indian reservation.[3] Otter Tail claimed, inconsistently, that the PSC erred in failing to grant permanent authority to Otter Tail.

On the appeal the trial court, citing Article XIII, Section 1, of the North Dakota Constitution,[4] held that the PSC did not have jurisdiction to act under Chapter 49–03, NDCC. The court further ruled that if it presumed that the PSC had jurisdiction, it would defer to PSC expertise and sustain the decision to deny the Otter Tail application for permanent authority.

Baker Electric appealed to this court and argues that the PSC has regulatory jurisdiction over the territorial service areas of competing public utilities even where the service point is within an Indian reservation. The attorney general, representing the State of North Dakota (and presumably the PSC) supports the Baker Electric position.

Belcourt is a community of approximately 2,000 residents but is not organized as a municipality under the laws of North Dakota. Since 1955, the area in and around Belcourt, within the Indian reservation, has been provided electrical service by Otter Tail, Baker Electric, and a BIA-owned distribution system. In 1968, the BIA sold its system to Otter Tail pursuant to Public Law 87–279, 75 Stat. 577, 25 U.S.C. § 15. The contract provided:

"Otter Tail will provide electric service to customers requesting same subsequent to the effective date of this contract in accordance with Otter Tail's rules and regulations and in conformance with the rules and regulations of the Public Service Commission of the State of North Dakota."

In this court Otter Tail argues (consistent with the trial court's ruling) that this case does not involve "a question of jurisdiction of Indian persons, Indian tribes or non-Indians ... or interference with tribal self government ...." Otter Tail contends "... the issue does deal with the impairment of rights granted by federal law," and interference with federal regulation of land use contrary to the supremacy clause.[5]

■ We first need to examine the posture of this case to determine whether Otter Tail's appeal has given the courts jurisdiction, as well as sufficient facts necessary to determine whether or not the PSC had jurisdiction to act in this case. Similar circumstances were confronted in *Johnson v. Elkin*, 263 N.W.2d 123 (N.D.1978). In

---

"2. The decision is in violation of the constitutional rights of the appellant.

"3. Provisions of this chapter [28–32] have not been complied with in the proceedings before the agency.

"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

"6. The conclusions and decision of the agency are not supported by its findings of fact."

3. Specification of error V(L) states in part: "The location in question is entirely within the boundaries of the Turtle Mountain Indian Reservation within which the federal government has plenary and exclusive jurisdiction, which it exercises through the Bureau of Indian Affairs."

Specification IX states in part: "The federal government has exclusive and plenary jurisdiction on Indian Reservations...."

Specification XI states in part: "... the Commission's error was in assuming that ... [its] jurisdiction would extend to service on a Federal Indian Reservation."

4. The provision in Article XIII, Section 1, North Dakota Constitution, relied upon by the trial court, provides:

"... Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States, provided, however, that the legislative assembly of the State of North Dakota may, upon such terms and conditions as it shall adopt, provide for the acceptance of such jurisdiction as may be delegated to the state by Act of Congress; ..."

5. Article 6, United States Constitution, provides in part: "This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

that case, a divided court concluded that under the Administrative Agencies Practice Act (Ch. 28–32, NDCC), "under certain circumstances" constitutional issues can be raised for the first time at the district court level.

Neither the Legislature nor this court has attempted any refinement that permits someone to readily determine when it is necessary to institute a collateral attack and when it is permissible to use the administrative proceedings to assert that "the decision is in violation of the constitutional rights of the appellant" (§ 28–32–19(2), NDCC). We conclude, in this case, that a collateral proceeding would have been more appropriate and more helpful to a thorough examination of the federal supremacy question, yet we cannot say that under present law the question can only be raised in a collateral proceeding.

Most cases, whether upholding state law or overturning it on the basis of a conflict with a federal preemption, start with a cite to *McCulloch v. Maryland,* 17 U.S. 316, 4 Wheat 316, 4 L.Ed. 579 (U.S.1819). A favorite quote is Chief Justice Marshall's:

"It is of the very essence of supremacy to remove all obstacles to its action within its own sphere, and so to modify every power vested in subordinate governments as to exempt its own operations from their own influence. This effect need not be stated in terms. It is so involved in the declaration of supremacy, so necessarily implied in it, that the expression of it could not make it more certain." 17 U.S. 316, 426–427, 4 Wheat 316, 426–427, 4 L.Ed. 579, 606–607.

Chief Justice Marshall was writing about the imposition of taxes. Perhaps if he had before him a case involving a split of regulatory authority, he might have said that Congress, indeed, would need to explicitly declare the extent of the federal preemption. For example, Justice White, writing for the majority in *Pacific Gas & Electric Co. v. State Energy Resources Conserva-*

*tion & Development Comm'n,* 461 U.S. 190, 103 S.Ct. 1713, 1717, 1719, 75 L.Ed.2d 752 (1983), referred to the point at which federal efforts intersect "with the exercise of the historic state authority ...." Justice White concluded that in the field of regulating nuclear energy power plants, Congress has split the authority in that the federal Atomic Energy Act authorized states to regulate nuclear power plants for some purposes. [See Section 271, 42 U.S.C. § 2018 and Section 274(k), 42 U.S.C. § 2021(k)].

See also *Marshall v. Burlington Northern, Inc.,* 720 F.2d 1149 (9th Cir.1983), and cases cited therein. "[The] strong Madison/Marshall 'preemptive' view ... is no longer the law of the land." *James v. Watt [Clark],* 716 F.2d 71 (1st Cir.1983), *cert. denied* — U.S. —, 104 S.Ct. 2397, 81 L.Ed.2d 354.

An often-cited dissent by Justice Frankfurter in *First Iowa Hydro-Elec. Coop. v. Federal Power Com.,* 328 U.S. 152, 66 S.Ct. 906, 90 L.Ed. 1143 (1946), pointed out that in certain instances Congress has recognized explicitly the separate interest and role of the state.[6]

About a year after he wrote *Pacific Gas & Electric, supra,* Justice White explained, in *Silkwood v. Kerr-McGee Corp.,* — U.S. —, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984):

"As we recently observed in *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Comm'n,* [461] U.S. [190], 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983), state law can be preempted in either of two general ways. If Congress evidences an intent to occupy a given field, any state law falling within that field is preempted. Id., at —, 103 S.Ct. at 1722; *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). If

---

6. The relationship between the supremacy clause in Article 6 and the reserved powers provision in the Tenth Amendment, which was

not briefed or researched, would appear to require the recognition of a balancing necessity.

Congress has not entirely displaced state regulation over the matter in question, state law is still preempted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217–1218, 10 L.Ed.2d 248 (1963), or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress, *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)...."

 We are authorized to start with a basic assumption that displacement of state law by a federal preemption was not intended. *Maryland v. Louisiana,* 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). Not only state-imposed "burdens" but non-consensual "benefits" may constitute state interference. *United States v. City of Adair,* 539 F.2d 1185 (8th Cir.1976). A preemption of state action may be accomplished by federal activity implementing an Act of Congress, as well as by the Act of Congress itself. *Chrysler Corp. v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979).

 In *Northern States Power Co. v. Hagen,* 314 N.W.2d 32, 37 (N.D.1981), Justice Sand, for a unanimous court, wrote:

"Congressional enactments that do not exclude all state legislation in the same field nevertheless override state laws with which they conflict. U.S. Const., Art. VI. The criterion for determining whether or not there is such a conflict is whether the state's law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' *Jones v. Rath Packing Co.,* 430 U.S. 519, 526, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)...."

In our search for the "obstacle" in this case, Otter Tail argues that we should apply the principles from the cases of *Public Service Commission v. City of Williston,* 160 N.W.2d 534 (N.D.1968), and *City of*

*Grafton v. Otter Tail Power Company,* 86 N.W.2d 197 (N.D.1957). The *Williston* case involved the power of the PSC to control the rates at which a utility could supply electrical energy to a city, and the *Grafton* case involved the making of a contract by a state agency to purchase electrical energy. In both cases this court said that the PSC does not have jurisdiction. To the extent that this court said that the PSC cannot interfere with or encroach upon state affairs, these cases are consistent with the federal court cases we have cited on the issue of preemption.

It appears, in this case, that the objective of the BIA is to contract for energy at the new Belcourt school with the supplier selected pursuant to PSC requirements. (See footnote 1.) We have considered all factors brought to our attention:

(1) the provision in the Otter Tail-BIA contract—"in conformance with the rules and regulations of the Public Service Commission of the State of North Dakota";

(2) the filing of a customer preference providing—"customer [BIA] ... desires electric service from Otter Tail Power Company as a public utility *subject to the jurisdiction of and regulation by this Commission ...*" [emphasis supplied]; and

(3) the statement in the BIA letter— "The Bureau of Indian Affairs is obliged to purchase power from the utility company serving the area where the facility is located. In disputes, such as exists for the new school site, the bureau will comply with the decision of the appropriate regulatory authority."

We cannot avoid the conclusion that the PSC action provided no "obstacle" to the federal purpose but was entirely consistent therewith.

Finally, we need to comment upon the Baker Electric and State of North Dakota argument that the exercise of jurisdiction by the PSC within the Indian reservation in this case does not infringe upon the right of tribal self-government. The district court decision was not based upon that theory, and Otter Tail's argument realisti-

cally must be interpreted as a concession that there is no "Indian jurisdiction" question in this case. Under these circumstances, that issue is moot and we will not consider it further.

The judgment of the district court is reversed. The case is remanded for entry of judgment affirming the determination of the PSC.

ERICKSTAD, C.J., GIERKE and SAND, JJ., and ILVEDSON, Surrogate Judge, concur.

VANDE WALLE, J. disqualified; ILVEDSON, Surrogate Judge, sitting in his stead.