**ALLEGHANY CORPORATION, Plaintiff,**

v.

**Earl R. POMEROY, Commissioner of Insurance of the State of North Dakota, Defendant,**

**and**

**American Council of Life Insurance, and the American Insurance Association, Amici Curiae,**

**and**

**St. Paul Insurance Company of North Dakota, a North Dakota Insurance company; and The St. Paul Companies, Inc., a Minnesota corporation, Intervening Defendants.**

**Civ. No. A1–88–096.**

United States District Court, D. North Dakota, Southwestern Division.

Aug. 11, 1988.

H. Patrick Wier, and Harlan G. Fuglesten, Fargo, N.D., Thomas Tinkham, Richard Bond, and Leslie J. Anderson, Minneapolis, Minn., for Alleghany Corp.

Merle T. Pederson, Bismarck, N.D., for Pomeroy.

Patrick Durick, Joel W. Gilbertson, David E. Reich, Bismarck, N.D., James A. McDer-

mott, James A. Strain, Eric R. Moy, Peter J. Rusthoven, and David Hamilton, Indianapolis, Ind., for amici curiae.

Thomas O. Smith, Bismarck, N.D., for St. Paul Companies.

## MEMORANDUM AND ORDER

CONMY, Chief Judge.

Alleghany Corporation is a Delaware corporation with its headquarters in New York. Its common stock is listed and traded on the New York Stock Exchange. Alleghany, through its subsidiaries, is engaged in the sale and underwriting of title insurance and in the property and casualty insurance business.

St. Paul Companies, Inc. is incorporated under the laws of the state of Minnesota with its headquarters located in St. Paul, Minnesota and is an insurance holding company for one of the largest groups of property-liability insurance underwriters in the United States. Through its subsidiaries it is engaged in investment banking, insurance, and reinsurance brokerage activities. St. Paul Companies, Inc. wholly owns St. Paul Fire and Marine Insurance Company, a Minnesota corporation with its home office in St. Paul, Minnesota, which in turn wholly owns the St. Paul Insurance Company of North Dakota. St. Paul Insurance Company of North Dakota is a North Dakota corporation with its offices located in Fargo, North Dakota, and is a writer of professional liability insurance for physicians in North Dakota.

In July, 1987, Alleghany began to purchase common stock of St. Paul Companies, Inc. According to Alleghany it currently owns directly or through its subsidiaries approximately 9.2 percent of about 46,301,857 shares of outstanding common stock of St. Paul Companies, Inc. Alleghany seeks to acquire up to 20% of the stock of the St. Paul Companies, Inc.

In order to acquire the additional stock, however, Alleghany, pursuant to Minnesota's Insurance Holding Company Act, was required to obtain prior approval from the Commissioner of the Minnesota Department of Commerce. The Insurance Holding Company Act provides that the Commissioner of Commerce must give its approval for acquisition of control of a domestic insurer so long as the acquisition does not cause a material change in St. Paul Companies' business which would be unfair to policyholders or not in the public interest.

On November 19, 1987, Alleghany filed an Amended Form A pursuant to section 60D.02 of the Minnesota Insurance Holding Company Act proposing to acquire up to 20% of the stock of St. Paul Companies, Inc. On January 11, 1988, a Deputy Commissioner of the Minnesota Department of Commerce gave Alleghany approval to acquire up to and including 20% of the common stock of the St. Paul Companies, Inc. The Deputy Commissioner determined that Alleghany's plans and proposals were not unfair and unreasonable to the policyholders of the Insurers and that they were not contrary to the public interest within the meaning of the Insurance Holding Company Act. The decision of the Deputy Commissioner is currently under review in the Minnesota courts.

Like Minnesota, eight other states, including North Dakota, required Alleghany to obtain approval for the acquisition of more than 10% of the stock of St. Paul Companies, Inc. pursuant to similar Insurance Holding Company Acts because St. Paul Companies, Inc. had a wholly owned subsidiary in each of those states.[1] Since St. Paul Insurance Company of North Da-

1. Forty-seven (47) states have enacted some type of Insurance Holding Company Act patterned on the Model Insurance Holding Company Systems Regulatory Act. Including the domicile state of Minnesota, Alleghany was required to obtain approval from nine states in order to acquire more than 10% of the stock of St. Paul Companies, due to subsidiaries that St. Paul Companies had in the eight other states. These other states include North Dakota, California, Indiana, Nebraska, New York, Texas, Wisconsin, and Delaware. An application for approval was also filed with Illinois, but later withdrawn due to an Illinois statute which provides an exemption in cases in which the holding company whose securities are being purchased is "subject to requirements in the jurisdiction of its domicile which are substantially similar to those contained" in Illinois.

kota is a wholly owned subsidiary of the St. Paul Fire & Marine Insurance Company, which is wholly owned by the St. Paul Companies, Inc., Alleghany was required to obtain approval from the North Dakota Insurance Commissioner to acquire more than 10% of the stock in St. Paul Companies, Inc. *See* N.D.Cent.Code § 26.1–10–03 (1987 supp.). On November 23, 1987, Alleghany filed with the Commissioner its proposal to acquire up to 20% of the stock of the St. Paul Companies, Inc. pursuant to section 26.1–10–03 of the North Dakota Century Code. On March 29, 1988, the Insurance Commissioner ordered that Alleghany could not acquire 10% or more of the stock of the St. Paul Companies, Inc. Contrary to the findings of Minnesota (the state of domicile for St. Paul Companies, Inc.) the Insurance Commissioner of North Dakota concluded that the 20% acquisition was not in the best interest of the public nor in the interest of the policyholders.

Rather than appealing the decision of the North Dakota Insurance Commissioner to the state district court pursuant to North Dakota's Administrative Procedures Act, Alleghany filed the present action in federal district court for declaratory and injunctive relief.[2] Specifically Alleghany seeks to have section 26.1–10–03 of the Insurance Holding Company Act declared invalid and unenforceable and to enjoin the Defendant from invoking said section. The Commissioner of Insurance for the State of North Dakota has moved this court to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b) of the Federal Rules of Civil Procedure based on the principals of federal abstention. The Defendant has also requested oral argument on his motion to dismiss. The court finds, however, that the issues have been extremely well briefed and that oral argument would not aid the court in its determination. Accordingly, the request for oral argument will be denied.

**2.** In its complaint Alleghany asserts that the North Dakota Insurance Holding Company act violates the Commerce Clause, the Supremacy Clause, the Due Process Clause of the fifth and fourteenth amendments and/or the Full Faith and Credit Clause and as such violates section 1983 of title 42.

## I. ABSTENTION

Several principles have been developed which prohibit federal courts from intervening in pending state judicial proceedings. In *Younger v. Harris,* the United States Supreme Court held that federal courts may not enjoin pending state criminal prosecutions except under special circumstances. *Younger v. Harris,* 401 U.S. 37, 41, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971). Central to the Court's holding is the premise that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief. *Id.* at 43, 91 S.Ct. at 750. The court noted that such restraint was warranted in order to prevent erosion of the role of the jury and to avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted. *Id.* at 44, 91 S.Ct. at 750. The court further stated that its holding was reinforced by an even more vital consideration:

> the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.... The concept does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the national Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors

to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id.* In recognition of the principles of equity, comity, and federalism the Court ruled that federal courts should ordinarily refrain from enjoining ongoing state criminal prosecutions. Restraining such prosecutions would entail an unseemly failure to give effect to the principle that state courts, along with federal courts, have a solemn responsibility to guard, enforce, and protect every right granted by the Constitution. *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). The Court has also recognized that these same concerns are prevalent in civil proceedings when important state interests are involved thus warranting federal abstention. *See e.g. Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed. 2d 482, *reh'g denied* 421 U.S. 971, 95 S.Ct. 1969, 44 L.Ed.2d 463 (1975) (federal defendants filed complaint in federal court from adverse state court decision rather than appealing to state appellate courts); *Middlesex County Ethics Committee v. Garden,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed. 2d 116 (1982) (attorney disciplinary proceedings); *Pennzoil Co. v. Texaco,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (enforcement of state court judgment); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (state attachment and execution proceedings); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (state contempt proceedings); *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (child-custody proceedings). The Court has also found *Younger* applicable to pending state administrative proceedings. *See Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) and *Ohio Civ. Rights Commission v. Dayton Christian Schools,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986).

The Defendant asserts that the Court's holding in *Dayton* and preceding Supreme Court decisions dictate that this court abstain from hearing the case. In *Dayton,* an employee of the Dayton Christian Schools filed a complaint with the Ohio Civil Rights Commission alleging sexual discrimination. *Ohio Civ. Rights Commission v. Dayton Christian School,* 477 U.S. 619, 106 S.Ct. 2718, 2721, 91 L.Ed.2d 512 (1986). Following a preliminary investigation, the Commission found probable cause to believe that Dayton had discriminated against the employee on the basis of sex. *Id.* When Dayton failed to take corrective measures, the Commission initiated administrative proceedings against Dayton. *Id.* While the administrative proceedings were still pending Dayton filed a 1983 action in federal court seeking to enjoin the Ohio Civil Rights Commission from proceeding with the administrative hearings. *Id.* 106 S.Ct. at 2721–22.

Ruling on the abstention doctrine, the Court concluded that *Younger* and its progeny are applicable to state administrative proceedings in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claims. *Id.* at 2723. The Court went on to hold that since Ohio permitted constitutional claims to be raised in its state court judicial review of the administrative proceedings the federal district court should have abstained from interfering with the pending administrative proceeding. *Id.* at 2724.

This case, however, is not governed by the Court's decision in *Dayton.* The Court in *Dayton* found that there was no authority in Ohio which indicated that a party would not be permitted to raise constitutional claims in state court review of the administrative proceedings. Id. at 2724. In North Dakota, however, such authority does exist.

In *First Bank of Buffalo v. Conrad,* the North Dakota Supreme Court ruled that the Administrative Procedures Act is not designed to resolve constitutional issues. *First Bank of Buffalo v. Conrad,* 350 N.W.2d 580, 584 (N.D.1984). The court indicated that where one attacks the constitutionality of the very law which the administrative agency is to administer the proper procedure is to seek declaratory judgment pursuant to section 32–23 *et seq.*

of the North Dakota Century Code and not challenge the constitutionality of the law through the Administrative Procedures Act. *See Id.* at 585. Although the court has found that in certain cases a party may assert that the administrative decision is in violation of constitutional rights of a party, *See Application of Otter Tail Power Co.,* 354 N.W.2d 701, 704 (N.D.1984) and *Johnson v. Elkin,* 263 N.W.2d 123 (N.D.1978); it has indicated that the more appropriate and helpful method of determining the constitutionality of a particular law would be in a collateral proceeding rather than through the administrative procedures. *See Otter Tail Power Co.,* 354 N.W.2d at 704, and *First Bank of Buffalo,* 350 N.W.2d at 584.

The Commissioner of Insurance further argues that *Huffman* requires Alleghany to exhaust its administrative procedures by exercising its appeal rights in the state courts. Such a conclusion, however, is not supported by the *Huffman* decision. In *Huffman* the Court's decision is clearly limited to cases wherein "state judicial proceedings" have not been exhausted. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 609, 95 S.Ct. 1200, 1211, 43 L.Ed.2d 482 *reh'g denied* 421 U.S. 971, 95 S.Ct. 1969, 44 L.Ed.2d 463 (1975). Pursue Ltd. filed its federal complaint rather than appealing a state trial court judgment within the state's appellate process. *Id.* 420 U.S. at 598, 95 S.Ct. at 1205. The Court noted that federal intervention at such a stage would be highly duplicative, since an entire trial has already take place, and it is also a direct aspersion on the capabilities and good faith of the state appellate court. *Id.* at 608, 95 S.Ct. at 1210. In the case at bar no state judicial proceedings have been started nor did the administrative proceedings deal with the constitutional issues asserted by Alleghany in this action. In fact in North Dakota the administrative agency is clearly without power to adjudicate constitutional issues. *First Bank of Buffalo v. Conrad,* 350 N.W.2d 580, 585 (N.D.1984). No duplication will result if this court does not abstain since there has been no trial, nor a record on the constitutional issues asserted. More importantly, the Court in *Huff-*

*man* expressly states that its decision is not intended to affect those cases wherein the Court has determined that a federal equity plaintiff challenging state administrative action need not have exhausted his state judicial remedies before seeking federal relief. *Id.* at 610 n. 21.

The case at bar is further distinguishable from *Dayton* and other cases wherein the Court found abstention appropriate. In most of the cases in which the Supreme Court has applied the *Younger* doctrine, either administrative or disciplinary proceedings were still pending, *See Ohio Civil Rights Commission v. Dayton Christian Schools,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (while administrative proceedings were still pending, Dayton filed action in federal court); *Middlesex County Ethics Committee v. Garden,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (attorney discipline proceedings initiated by local ethics committee but not resolved within state procedure for disciplining attorneys prior to filing of federal complaint); or the state's judicial process had been initiated, *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (state criminal trial was actually being prosecuted when federal complaint filed); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482, *reh'g denied* 421 U.S. 971, 95 S.Ct. 1969, 44 L.Ed.2d 463 (1975) (federal complaint was filed rather than appealing an adverse decision from Court of Common Pleas); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (federal action filed after appellees were found in contempt of court for failing to satisfy state court judgment); *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed. 2d 994 (1979) (child custody proceedings pending in state court); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (state attachment and execution proceedings pending in state court at time federal complaint filed); *Pennzoil v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (prior to entry of judgment in pending state court action, federal action filed). Consequently, the Court was very sensitive to the princi-

814

ples of equity, comity, and federalism upon which the abstention doctrine is premised. The principles of equity, comity, and federalism have little force, however, in absence of *pending* state proceedings. *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Where no state proceedings would be undermined, the rule governing federal court abstention is the converse of the *Younger* rule. *Coley v. Clinton,* 635 F.2d 1364 (8th Cir.1980). Thus the concerns of comity and federalism are not present in the instant case since there is no longer any administrative proceeding pending nor has the state judicial process been initiated. The administrative proceedings were resolved and came to a completion when the Commissioner of Insurance denied Alleghany the right to purchase 10% or more of the stock of the St. Paul Companies, Inc..

■ Abstention from the exercise of federal jurisdiction is the exception, not the rule. *Colorado River Water Conser. Dist. v. U.S.,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 *reh'g denied* 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976). As a general rule, federal courts have an unflagging obligation to exercise their jurisdiction when invoked to redress alleged constitutional deprivations by state administrative action; it is only in exceptional circumstances that a federal court should abstain from invoking its jurisdiction in favor of state resolution of the preliminary issues. *See e.g. Coley v. Clinton,* 635 F.2d 1364 (8th Cir.1980); *Colorado River Water Conser. Dist. v. U.S.,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483, *reh'g denied* 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976); and *Deakins v. Monaghan,* — U.S. —, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988). Consequently, where, as here, there is no pending proceeding either administratively or judicially, there can be no duplicative legal proceedings or disruption of the state judicial system, nor would federal intervention undermine any state proceedings or reflect negatively on the state court's ability to enforce constitutional principles. *See Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Because there is no pending state administrative proceeding which would be disrupted by this court

exercising jurisdiction over this matter, because no state judicial proceedings have been initiated either through the Administrative Procedures Act or a declaratory judgment action, and in light of the above cited North Dakota cases which indicate that a collateral attack on the constitutionality of the Insurance Holding Company Act would be the proper procedure rather than through the Administrative Procedures Act, this court finds that the principles of comity and federalism are not implicated and as such this court need not abstain from exercising its jurisdiction under the *Younger* doctrine.

The Defendant next contends that this court should abstain under the doctrine enunciated in *Burford v. Sun Oil Company,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 *reh'g denied* 320 U.S. 214, 63 S.Ct. 1442, 87 L.Ed. 1851 (1943). The Court has indicated that under the *Burford* abstention doctrine, abstention may be appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case under consideration. *Colorado River Water Conser. Dist. v. U.S.,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483, *reh'g denied* 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976). Abstention under *Burford* may be also required where the exercise of federal review of the question in the case would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *Id.*

The present case certainly does not fall within the ambit of *Burford* abstention. Exercising jurisdiction over the constitutional claims asserted in this case will not disrupt any of North Dakota's efforts in regulating its insurance industry. The only statute being challenged in this case is the state's authority to restrain the free enterprise system from functioning by denying to Alleghany the right to purchase a controlling interest in a company that is twice removed from the state. The issues presented for review do not involve questions of state policy, but rather concern questions of constitutional law. Further, the federal constitutional claims asserted

by Alleghany are not inextricably linked to complex state law issues requiring deference to state courts.

Furthermore, *Burford* abstention has consistently been found to be inapplicable where a federal plaintiff asserts a *"potential"* preemption claim. *See e.g. Southwestern Bell Tel. v. Ark. Public Serv. Commission,* 824 F.2d 672, 673 n. 5 (8th Cir.1987) *cert. denied* — U.S. —, 108 S.Ct. 1293, 99 L.Ed.2d 503 (1988) and *Ky. West Virginia Gas Co. v. Pa. Public Util. Commission,* 791 F.2d 1111, 1115 (3rd Cir. 1986) (citing numerous authorities for the proposition). In the case at bar, Alleghany has asserted a violation of the Supremacy Clause. Hence this court will not abstain from exercising jurisdiction over this matter.

## II. *INTERVENTION*

The court also has pending a motion by the St. Paul Companies (St. Paul Companies, Inc., The St. Paul Fire and Marine Insurance Company, and the St. Paul Company of North Dakota) to intervene as of right or in the alternative for permissive intervention. Since the court will grant permissive intervention to the St. Paul Companies, it will discuss only the criteria necessary for permissive intervention.

Under Rule 24(b)(2) of the Federal Rules of Civil Procedure a party may be permitted to intervene when (1) its claim or defense and the main action have a question of law or fact in common and (2) intervention will not "unduly delay or prejudice the adjudication of the rights of the original parties. Fed.R.Civ.P. 24(b)(2). The issue before this court is a question of law. Either the North Dakota Insurance Holding Company Act is unconstitutional based on any one of the grounds asserted by Alleghany or it is not. The St. Paul Companies, for the security of its policyholders, are vigorously defending the statute being considered. Consequently, their claim and defense of the statute and the main action satisfy the first criteria for permissive intervention.

Alleghany asserts that granting permissive intervention will cause undue delay and prejudice because the St. Paul Companies will "seek to inject collateral issues if permitted to intervene". The court disagrees. The facts necessary to decide the constitutional challenge are not in dispute and the court need not dwell on those facts. It appears that the issues raised in the case are ideally suited for resolution by summary judgment. Thus the court fails to see how allowing the St. Paul Companies to intervene will unduly delay the ultimate resolution on the merits of Alleghany's claim. Permitting the St. Paul Companies to intervene will contribute to the resolution of the constitutional issues. This court finds that it is more appropriate to allow intervention, due to the significant impact this decision may have on the parties, so that all of the legal issues may be adequately presented to the court.

It is hereby ORDERED that:

(1) THE MOTION TO ABSTAIN IS DENIED.

(2) THE ST. PAUL COMPANIES SHALL BE ALLOWED TO INTERVENE IN THIS MATTER PURSUANT TO RULE 24(b)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE. THE CLERK OF COURT IS DIRECT TO FILE THE ANSWER OF THE ST. PAUL COMPANIES.